Joseph E. HANDLEY, Appellant,

v.

STATE of Alaska, DEPARTMENT
OF REVENUE, Appellee.

No. 3885.

Supreme Court of Alaska.

Sept. 18, 1992.

Joseph E. Handley, pro se.

Teresa Williams, Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

I.  FACTUAL AND PROCEDURAL
BACKGROUND

Joseph Handley is currently at the Spring Creek Correctional Center in Se-

ward, serving a 45 year sentence imposed in 1978. Pursuant to 22 Alaska Administrative Code (AAC) 05.251 (1991), he was transferred to the Federal Bureau of Prisons (FBP) and was "housed" at the Fort Leavenworth Federal Prison (1978–1984), El Reno Federal Prison (1984–1986), and the Oxford Federal Prison (1986–1988), until he was transferred to Spring Creek Correctional Center in Alaska in October 1988.

The Department of Revenue, Permanent Fund Division, (DOR) sent Handley's permanent fund dividend application to his correctional facility starting in 1982. Each year Handley completed the form in the same manner and mailed it to DOR. From 1982 to 1986 DOR approved the application.

In 1987 DOR rejected Handley's application. DOR cited Handley's failure to include the signatures of the residency verifiers on his application.[1] On his original 1987 application, Handley printed the name "Harry Davis D.A." and signed in cursive the name "Judge Warren Taylor"[2] in the boxes requesting the signature of "Spouse, Relative or Friend." Under each of these, in boxes requesting the printed name of the person "Who Signed Above," Handley wrote "Fbx." He did not fill in the boxes

requesting date, mailing address, city, state and zip code, and daytime telephone number.

DOR wrote Handley and requested additional information about his absences between October 1986 and March 1987. Handley replied that he was absent from April 13, 1978 until 1988 when the new prison opened in Alaska. Handley's 1987 permanent fund dividend was denied.

Handley filed a request for an informal appeal. His dividend denial was then amended to include the basis that he did not have the required intent to return to Alaska. DOR based this finding on the records from Handley's hearings before the Alaska Department of Corrections Classification Review Board. At these hearings, Handley had stated that he did not wish to return to Alaska and wanted to be paroled elsewhere.[3]

Replying to another DOR request for additional information, Handley submitted an amended application, back dated to the day after he signed his original application. This application was verified by two correctional counselors from the Federal Correc-

1. The 1987 Permanent Fund Dividend Application reads:
   RESIDENCY VERIFICATION IS REQUIRED BY TWO ADULTS WHO KNOW YOU
   **The statement below must be read and signed by two adults who know you,** and who can confirm that you are eligible for a permanent fund dividend.... Persons you may wish to ask to verify your residency include your spouse, other relatives, close friends or neighbors. It is preferable that these persons be Alaska residents who are also applying for their permanent fund dividends.
   (Emphasis in original). The application then requests the signature, address and telephone number of the verifiers.

2. Harry Davis was the Fairbanks district attorney who prosecuted Handley. Judge Warren Taylor was the judge who presided over Handley's criminal case and sentenced him. Handley claimed he included the names of Davis and Taylor because they could attest that he was in the Alaska Prison System, a matter not in issue. He used their names as "references," but did not indicate that on his application.

3. Handley is not even eligible for parole until 1997. Incarcerated in 1977, he has a full term projected release date of October 13, 2007. A

letter from Robert P. Spinde, Chief Classification Officer, Department of Corrections, to Tracy Buchheim, PFD Specialist 1, Permanent Fund Dividend Division, discloses the following information taken from log notes of hearings:

August 1979 Wants to complete his time in the federal prison.

June 1980 Does not want to return to Alaska. Desires parole to state of Wyoming.

1981 No classification hearing was held for Mr. Handley this year, he was back in Alaska for legal proceedings.

March 1982 No desire to return to Alaska. Complete his time FBP.

May 1983 Does not want to return to Alaska while serving his sentence.

April 1984 Wishes to remain in FBP until after the max unit is in operation for a few years.

1985 Does not want to return to Alaska.

1986 The written record regarding this hearing cannot be located.

May 1987 Mr. Handley waived this hearing.

May 1988 Wishes to return to Alaska. Will be requesting return to Alaska when bedspace is available. (Mr. Handley was returned to Alaska on 10/18/88, and remains to the present time.)

tional Institution in Oxford, Wisconsin.[4] At an informal conference, DOR affirmed the denial on the alternative ground.

Handley then requested a formal hearing. When the hearing was conducted, Handley, who had since been transferred to the Seward facility, participated by phone. During the hearing Handley was assisted by a corrections counselor. At the hearing the Revenue Hearing Examiner reinstated improper verification as a ground for rejection of the application. He held that Handley's revised application should not have been accepted because the first application was submitted with false residency verifications designed to deceive DOR. The hearing examiner based his determination that the proffered verifiers' signatures were intended to be deceptive partly because they were in different handwriting, one having been printed and one written in cursive. The evidence was uncontradicted that both signatures were false and unauthorized. He construed AS 43.23.015 to mean that "the Applicant's signing of a PFD application constitutes a claim of eligibility predicated on the facts contained in the application." Again, Handley's appeal was denied on both grounds.

Handley appealed to the superior court. AS 22.10.020(d); Alaska R.App.P. 602(a)(2) (1991–92). The superior court affirmed DOR's decision.

## II. DISCUSSION

### A. STANDARD OF REVIEW.

■ We will independently review the merits of an administrative determination. No deference is given to the superior court's decision when that court acts as an intermediate court of appeal. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987).

■ We have recognized four principal standards of review of administrative decisions. The "substantial evidence" test is used for questions of fact. The "reasonable basis" test is used for questions of law involving agency expertise. The "substitu-

tion of judgment" test is used for questions of law where no expertise is involved. The "reasonable and not arbitrary" test is used for review of administrative regulations. *Jager v. State,* 537 P.2d 1100, 1107 n. 23 (Alaska 1975).

■ In this case, the substantial evidence test applies. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Keiner v. City of Anchorage,* 378 P.2d 406, 411 (Alaska 1963). We need only determine whether such evidence exists, and do not choose between competing inferences. *Interior Paint Co. v. Rodgers,* 522 P.2d 164, 170 (Alaska 1974). We do not evaluate the strength of the evidence, but merely note its presence. *Matanuska–Susitna Borough v. Hammond,* 726 P.2d 166, 179 n. 26 (Alaska 1986).

■ Also applicable is the reasonable and not arbitrary test. This standard is not demanding: "[W]here an agency interprets its own regulation ... a deferential standard of review properly recognizes that the agency is best able to discern its intent in promulgating the regulation at issue." *Rose v. Commercial Fisheries Entry Comm'n,* 647 P.2d 154, 161 (Alaska 1982).

### B. HANDLEY WAS PROPERLY DENIED HIS 1987 PERMANENT FUND DIVIDEND.

DOR denied Handley's 1987 permanent fund dividend on two grounds: 1) Handley did not have valid signatures of two residency verifiers; and 2) Handley did not prove that at all times during his absence he maintained the intent to permanently reside in Alaska.

■ The permanent fund dividend regulations require that "[a]n applicant must indicate on the prescribed form information required by the department which will support the claim of residency." 15 AAC 23.-675(a) (1988). The application required the

---

4. Handley was housed at Oxford when he submitted his original 1987 application, but did not originally seek to use local officers as his residency verifiers.

signatures of two residency verifiers.[5] Handley did not supply authentic signatures or even the names of authentic residency verifiers. The regulations allow for the submission of additional information if the application is "insufficient." 15 AAC 23.625(c) (1988). The applicant then has 60 days from being notified of its insufficiency to supply corrected information. 15 AAC 23.625(f)(1988).

However, DOR held that an extension was not available whenever the information submitted in the original application was deceptive. DOR found that Handley's application was intentionally deceptive and thus rejected it without considering his corrected submission.

We conclude that this ruling is reasonable and not arbitrary. Under these circumstances, the information "included on or provided with the application" was not merely "insufficient"; it was false information provided with the intention that DOR be deceived. The determination that Handley was trying to deceive DOR is supported by the record.[6] Relevant evidence as a reasonable mind might accept, namely the presence of the signatures, one printed and one written in cursive, exists to support the Revenue Hearing Examiner's and DOR's conclusions.

Because we conclude that the first basis for rejection of Handley's application is supported in fact and in law, we need not analyze whether the alleged absence of intent to reside permanently in Alaska is also supportable. Further, a holding on the second ground would have no precedential value, because incarcerated felons are no longer eligible for the permanent fund dividend. AS 43.23.005(d) (amended in 1988).

5. *See supra* note 1.

6. This court will not reweigh conflicting evidence or substitute its judgment for that of the individual charged with reviewing the applications. *See Childs v. Kalgin Island Lodge*, 779 P.2d 310, 315 (Alaska 1989). The evidence should be viewed from the perspective of that individual.

7. "The department shall ... assist residents of the state, particularly in rural areas, who because of language, disability, or inaccessibility to public transportation need assistance to es-

## C. DOR DID NOT BREACH ITS DUTY TO ASSIST AND INFORM HANDLEY.

■ Handley argues that DOR breached its duty to assist residents of the state who need help establishing eligibility.[7] Handley claims that DOR breached this duty by not advising him of regulation amendments which affected his status.

Handley does not point to any evidence that "language, disability, or inaccessibility to public transportation" affected his ability to establish his eligibility for a permanent fund dividend, or to submit an application for a permanent fund dividend.[8] He does not point to any evidence that he ever requested and was denied the assistance of the DOR in establishing his eligibility or submitting his application for a permanent fund dividend. We conclude that this claim of error has no merit.

## D. CONSTITUTIONAL OBJECTIONS.

Handley states two constitutional objections to the permanent fund dividend scheme. First, Handley contends that 15 AAC 23.190(a)(1991), which requires submission of "other information," is so vague that it violates due process. Second, he contends that the definition of "state resident" in AS 43.23.095(8) is overbroad and violates equal protection. In view of our affirmance on the ground that the forged signatures on false verifications of Handley's original 1987 application were made with the intent to deceive DOR, we need not address Handley's constitutional arguments. Handley's first objection is not relevant because "other information" need not be requested when intentional decep-

tablish eligibility and to apply for permanent fund dividends." AS 43.23.055(4).

8. Handley contends that he is "disabled" for purposes of AS 43.23.055(4) because as an inmate he does not have the "capacity for the full enjoyment of ordinary legal rights." We reject the idea that all inmates are "disabled" for the purposes of section 55. Rather, an applicant must have a physical or mental disability which hinders the application process in order to qualify for assistance.

tion is found. Handley's second objection need not be addressed because it pertains only to intent to reside in Alaska, the DOR's alternative ground for rejection.

### III. CONCLUSION

The denial of Handley's 1987 permanent fund dividend was based on a determination that he submitted false residency verifications containing forged signatures intended to deceive DOR. DOR's determination that Handley was trying to deceive DOR is supported by substantial evidence. DOR acted legally and permissibly in denying Handley an opportunity to correct his application.

The superior court's decision is AFFIRMED.

RABINOWITZ, Chief Justice, with whom MATTHEWS, J., joins, dissenting in part and concurring with the result.

I dissent from the court's affirmance of the DOR's ruling that Handley's application was intentionally deceptive and therefore was appropriately rejected. More particularly, my review of the record persuades me that there is an absence of substantial evidence to support the majority's conclusion that the information contained in Handley's application was "false information provided with the intention that DOR be deceived."

As the majority correctly notes in regard to Handley's original application he "... printed the name 'Harry Davis D.A.' and signed in cursive the name 'Judge Warren Taylor' in the boxes requesting the signature of 'Spouse, Relative or Friend.' Under each of these, in boxes requesting the printed name of the person 'Who Signed Above,' Handley wrote 'Fbx'."[9] In my opinion the following features of the questioned application information are significant. Although the signatures are in different handwriting from each other, they are not in different handwriting from the remainder of the application. Both were obviously written by Handley. The printed name matches the printing on the application and the cursive name matches Handley's own verifying signature. Moreover, the listing of the address as "Fbx" cannot be considered substantial evidence of intentional deception.

In addition to the above, I think Handley's explanations carry the day. At one point in the record Handley writes:

> I realize that ignorance of the law is not a valid excuse for anything. But, I honestly didn't believe that I was doing wrong, by putting the Judge's and the District Attorneys names on the application. *Specially after I had did it so many times & no problems.* For who would better know that I am a resident of Alaska & will be for many years.

(Emphasis provided.)[10]

For the reasons stated above, I conclude that DOR's rejection of Handley's 1987 permanent fund dividend application cannot be sustained on the basis that the information submitted in the original application was deceptive.[11]

---

**9.** The record is uncontradicted that from 1982 to 1986 DOR approved Handley's permanent fund dividend applications all of which were completed in the same manner as the now questioned 1987 application.

**10.** This theme is reiterated throughout the record. For instance, at another point in the record Handley states: "I honestly thought that I was filling out the forms correctly. For who would better know that I am in prison and have been since September 17, 1977, than the judge who had sentenced me, and the District Attorney who had prosecuted me?"

**11.** I am of the view that rejection of Handley's application is supportable on the basis that Handley lacked the intent to reside in Alaska throughout the period in question.