**Mary Ann WILLIAMS, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF REVENUE, Appellee.**

No. S–6862.

Supreme Court of Alaska.

June 13, 1997.

William J. Soule, Law Office of William J. Soule, Anchorage, for Appellant.

Kristin S. Knudsen, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee State of Alaska.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

EASTAUGH, Justice.

I. *INTRODUCTION*

Mary Ann Williams sought workers' compensation benefits for physical and mental injuries she claimed she sustained as a result of her employment with the State Child Support Enforcement Division (CSED). The Board denied both claims, and the superior court affirmed. We affirm the denial of Williams's mental injury claim, because we conclude that substantial evidence supports the Board's finding that she did not suffer an "injury" as that term is restrictively defined by AS 23.30.395(17).[1] We reverse the denial of Williams's physical injury claim and remand for calculation of benefits because we conclude that the State failed to rebut the presumption of compensability.

II. *FACTS AND PROCEEDINGS*

A. *Facts*

Some of the relevant facts are set out in *Williams v. State, Dep't of Revenue (Williams I),* 895 P.2d 99 (Alaska 1995):

[Mary Ann] Williams, who had held other state jobs since 1974, began working for the State of Alaska, Child Support Enforcement Division (CSED) in 1977. She was a clerk for CSED until 1979, when she was promoted to Child Support Enforcement Officer I. She became a supervisor with the title of Child Support Enforcement Officer II in 1980. Her general duties included preparing intrastate paternity orders and Uniform Reciprocal Enforcement Support Act cases, supervising a team of four people, reviewing case files, distributing the work load to typists, taking telephone calls, preparing affidavits, calculating AFDC arrearages, and meeting walk-in clients.

She became the only paternity establishment officer when a paternity unit was added to CSED in 1987. Williams coordinated paternity establishment, set up blood testing throughout the state, arranged travel and accommodations for clients, and dealt with problem clients who were having blood drawn.

In April 1990 Williams was told that her team needed to file paternity complaints in all its cases by October 1, 1990 to comply with the Family Support Act of 1988. There were approximately 2,400 to 2,600 such cases. Williams testified she found it difficult and stressful to file the required complaints as requested and complete her other work. She also testified that the absence of clerical support staff, the inadequacy of the physical work environment, and the perceived lack of management support created stress for Williams.

Beginning in 1974, Williams sought treatment for gastrointestinal problems, chronic stress anxiety, chronic fatigue, depression, and other problems. During the

1. AS 23.30.265(17) was renumbered as AS 23.30.395(17) in 1996. The renumbering did not affect the definition of "injury" contained in sub-section (17). For consistency, we will cite to AS 23.30.395(17).

following years, Williams saw a number of doctors and psychologists.

*Id.* at 100.

In October 1974 internist Dr. Paul Steer, who treated her for the next thirteen years, first noted Williams's bowel problems. Over the next decade, Dr. Steer reported on many separate occasions that Williams suffered from chronic stress anxiety. In April 1983 Williams began seeing Rusty Bellringer, a psychologist, for counseling for job-related stress. In June 1984 Dr. Steer diagnosed "chronic low grade depression" and "fatigue syndrome."

Williams had a good working relationship with her supervisor, Jim Demming, but he retired in December 1986, and she did not get along with his replacement, Brenda Drury. Williams testified that she felt a great deal of stress from having to explain procedures regarding paternity establishment to her new, less experienced, supervisor. Williams testified that there was mutual "intense dislike," and that Drury treated her unsympathetically in granting Williams's request for leave to see her dying mother.

Williams's gastrointestinal symptoms waxed and waned over the years, but came back in full force in 1987–88. In the spring of 1987 she developed an ulcer. Dr. Steer saw Williams in June 1987 and diagnosed chronic but worsened depression; chronic stress anxiety, exacerbated recently by both work and family stresses; hiatal hernia; early duodenal ulcer; chest wall muscular pains; and irritable colon. By letter of July 30, Dr. Steer recommended that Williams take a six- to eight-week medical leave. CSED granted Williams sick leave from September 8 until November 1, 1987. In the spring of 1988, however, her gastrointestinal problems recurred.

Williams saw Dr. Steer again in April 1988. He noted that she suffered from, among other things, depression with fatigue syndrome, chronic constipation, and chronic rectal discomfort and fissures.

In September 1988 Drury was replaced by Janell Briggs. Although Williams stated that Briggs was "probably the fairest person that [she] worked with as far as management

was concerned," she felt that there was a lack of access to Briggs, made worse by a perceived favoritism towards other officers.

In October 1988 Dr. Steer reported treating Williams for a "low grade flare of irritable colon associated with chronic depression."

Williams was seen by Dr. Richard Buchanan, a gastroenterologist in Dr. Steer's office, from February 1989 until October 1990. In November 1989 Dr. Buchanan diagnosed "fatigue syndrome," and in June 1990 diagnosed, among other things, possible reflux esophagitis and gastritis, depression and anxiety, anal incontinence, and rectal urgency. Dr. Buchanan referred her to a Seattle-based proctologist for the incontinence, a problem that had become more pronounced since 1989.

In addition to work-related stress, Williams faced ongoing problems in her personal life. In *Williams I,* we noted that

> In late 1986 her son was arrested for transporting cocaine. In the first half of 1987, her brother-in-law and mother died. Her son and daughter-in-law divorced in late 1986 and engaged in a painful child custody battle. Her daughter-in-law was awarded shared custody of Williams' granddaughter, and moved out of the state in 1988. Williams also experienced stress in her relationship with her husband.

895 P.2d at 100.

In late March 1990 Williams committed to leave CSED. She retired under the State's Retirement Incentive Program (RIP) effective October 1990, last working at CSED on July 2, 1990. *Id.* at 101.

### B. *Proceedings*

*Williams I* summarized the facts surrounding her workers' compensation claim.

> Three days [after her retirement] she filed a report of occupational injury or illness with the Board, claiming that numerous stress-related physical and mental injuries arose from her employment.

> The State controverted Williams' claim, asserting she had not suffered a compensable injury or illness arising out of and in the course of her employment. Williams

applied for adjustment of claim, claiming temporary total disability benefits from July 2, 1990, when she retired, permanent partial disability benefits, medical costs, transportation costs, vocational rehabilitation benefits, interest, attorney's fees and litigation costs. *Id.* at 101. Following hearing, the Board issued its first decision and dismissed all of Williams's claims. It found that she failed to meet the statutory requirements of AS 23.30.395(17) for mental injury caused by mental stress. She appealed to the superior court. It affirmed the Board's denial of benefits for her mental injury claim, and rejected her argument that the 1988 amendments to the Act regarding mental illness [2]—AS 23.30.120(c) and AS 23.30.395(17)—were unconstitutional. The superior court remanded the physical injury claim so the Board could reconsider its decision or provide factual findings supporting its decision. Williams appealed to this court. The superior court's remand of the physical injury claim to the Board meant that there was no final, appealable judgment, but we treated her appeal as a petition for review and considered only the constitutional questions. *Id.* at 100 & n. 1. Affirming the superior court's decision, we held that AS 23.30.120(c) and AS 23.30.395(17) are constitutional. *Id.* at 107.

On remand, the Board again denied Williams's physical injury claim. Williams again appealed and the superior court again affirmed. Williams now appeals the superior court's decisions affirming the Board's decisions denying her mental injury claim and physical injury claim.

## III. DISCUSSION

### A. Standard of Review

■ This court gives no deference to the decision of a superior court acting as an intermediate court of appeal. *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992). Rather, we independently review the merits of an administrative decision.

*Id.* In *Handley,* we summarized the standard of review of administrative decisions as follows:

> We have recognized four principal standards of review of administrative decisions. The "substantial evidence" test is used for questions of fact. The "reasonable basis" test is used for questions of law involving agency expertise. The "substitution of judgment" test is used for questions of law where no expertise is involved. The "reasonable and not arbitrary" test is used for review of administrative regulations.

*Id.* (citing *Jager v. State,* 537 P.2d 1100, 1107 n. 23 (Alaska 1975)).

■ "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Keiner v. City of Anchorage,* 378 P.2d 406, 411 (Alaska 1963)). "The question of whether the quantum of evidence is substantial is a legal question." *Fireman's Fund Am. Ins. Co. v. Gomes,* 544 P.2d 1013, 1015 n. 6 (Alaska 1976). Despite the existence of conflicting evidence, we will uphold the Board's decision if it is supported by substantial evidence. *Summerville v. Denali Ctr.,* 811 P.2d 1047, 1051 (Alaska 1991). It is not our role to reweigh the evidence, *Miller v. ITT Arctic Services,* 577 P.2d 1044, 1049 (Alaska 1978), and the Board has the sole power to determine the credibility of witnesses. AS 23.30.122; *Resler v. Universal Servs., Inc.,* 778 P.2d 1146, 1149 (Alaska 1989).

■ We review questions of law *de novo.* *Langdon v. Champion,* 752 P.2d 999, 1001 (Alaska 1988).

### B. Williams's Claims Are Not Time–Barred.

■ The Board held in its first decision that Williams's claims were barred because she failed to give timely notice of her injury

---

2. The legislature amended the Act in 1988 to restrict claims for mental injury arising from work-related stress. Ch. 79 § 21 SLA 1988. It did so by adding AS 23.30.120(c), which withdrew the statutory presumption of compensation for such claims. Subsection 120(c) is set out in Part III.C. The 1988 amendment also defined "injury" restrictively in AS 23.30.395(17), set out in Part III.C.

as required under AS 23.30.100(a).[3] On appeal, the superior court reversed that ruling and held that Williams's claims were not time-barred.[4] CSED argues that the court erred and that we can affirm the denial of Williams's claims on this alternative ground.

Alaska Statute 23.30.100 requires an employee to give notice to the Board and the employer within thirty days after the date of the injury.[5] Unless a statutory exception applies, failure to give notice within thirty days bars a claim under the Alaska Workers' Compensation Act. In its first decision, the Board concluded that Williams "through reasonable care and diligence" should have known on July 30, 1987, "that work-related stress was causing her physical and emotional problems and [should have] filed a notice of injury." By letter of that date Dr. Steer supported Williams's request for sick leave.

> It is my medical opinion at this time that until we can relieve her stressful situation, her symptoms will continue and despite intensive therapy may worsen. By history, most of her stress is work related.

Because she did not give actual notice of her physical and mental injury until July 5, 1990, the Board concluded that she had failed to meet the requirements of AS 23.30.100. The Board found that the employer was prejudiced by Williams's failure to give timely notice, and thus concluded that her delay in giving actual notice was not excused under subsection 100(d)(1).[6]

We disagree. The subsection 100(d)(1) exception applies if (1) the employer had knowledge of the injury, and (2) the employer has not been prejudiced by the employee's failure to give notice. Williams satisfied both requirements.

CSED had adequate knowledge of Williams's work-related stress soon after Williams gained such knowledge herself. Dr. Steer's July 30, 1987, letter mentioned that he was treating Williams for a "stress related medical illness" that was predominantly caused by her stressful work situation. Williams attached Dr. Steer's letter when she requested medical leave in August 1987. Dr. Steer's letter provided the employer knowledge of the injury.

When the recommended medical leave was not granted, Dr. Steer wrote to the Supervisory Sick Leave Committee of the Alaska Public Employees Association, reiterating that Williams obtain a "respite from the work stress situation at the earliest possible time." He also stated that he believed "that the stresses associated with her job have been a major, if not *THE* major, contributing factor" that precipitated her peptic ulcer disease, for which he was treating her. After the Committee denied Williams's application for use

---

**3.** Having found her claims time-barred, the Board nevertheless proceeded to analyze the merits of her claims.

**4.** Although Williams argues that CSED waived this argument by failing to cross-appeal, "[a]n appellee who does not wish a change in the decree appealed from is not required to cross-appeal in order to preserve his right to urge errors in a [lower] court's ruling that would, if accepted by the appellate court, support affirmance of the appealed decree." *Fox v. Alascom, Inc.*, 783 P.2d 1154, 1157 (Alaska 1989) (citations omitted). We therefore consider the timeliness issue.

**5.** AS 23.30.100 provides in pertinent part:
(a) Notice of an injury or death in respect to which compensation is payable under this chapter shall be given within 30 days after the date of such injury or death to the board and to the employer.
. . . .
(d) Failure to give notice does not bar a claim under this chapter

(1) if the employer, an agent of the employer in charge of the business in the place where the injury occurred, or the carrier had knowledge of the injury or death and the board determines that the employer or carrier has not been prejudiced by failure to give notice;
(2) if the board excuses the failure on the ground that for some satisfactory reason notice could not be given;
(3) unless objection to the failure is raised before the board at the first hearing of a claim for compensation in respect to the injury or death.

**6.** The Board also concluded that Williams's failure to give actual notice was not excused under subsections 100(d)(2) or (3). The Board noted that Williams did not address subsection 100(d)(2) in her brief and it found no satisfactory reason why notice could not be given. At the first Board hearing, the State objected pursuant to subsection 100(d)(3) to Williams's failure to file a notice.

of the sick leave bank, Williams wrote a memo to Drury explaining her medical problems and requesting a part-time work schedule.

Despite her medical leave in late 1987, Williams's physical and mental problems continued. In April 1990 Williams told Deputy Director Linda Langston that she "was having a problem dealing with stress again, and that [she] was having a lot of physical problems." She informed Langston that she was planning "to go on the early out RIP . . . at the end of October" and she also requested a modified work schedule to help alleviate the stress during her remaining months at CSED. Williams also testified that a month or two before she left CSED (in July 1990) she told her supervisor that she was "not feeling well, just being tired and feeling under a lot of pressure."

The second element of the subsection 100(d)(1) exception is lack of prejudice. The Board's finding that CSED was prejudiced by Williams's failure to give timely notice is not supported by substantial evidence. *See Tinker v. Veco, Inc.,* 913 P.2d 488, 492–93 (Alaska 1996). There is no indication any lack of formal notice impeded CSED's ability to investigate the injury or minimize the seriousness of the injury. *Id.* at 492. The record indicates that CSED, having knowledge of the injury, made efforts to alleviate Williams's stress,[7] but that these measures were ineffective or inadequate.[8]

We therefore conclude that the superior court correctly held that Williams's claims were not time-barred.

C. *The Board Did Not Err in Denying Williams's Mental Injury Claim.*

 The Board dismissed Williams's mental injury claim, noting that the statutory presumption of compensability was inapplicable to such a claim and finding that Williams

failed to meet the statutory requirements for a mental injury claim arising from work-related stress.

The Act defines "injury" restrictively if mental injury is caused by work-related mental stress. Alaska Statute 23.30.395(17) provides in pertinent part:

> "injury" does not include mental injury caused by mental stress unless it is established that (A) the work stress was extraordinary and unusual in comparison to pressures and tensions experienced by individuals in a comparable work environment, and (B) the work stress was the predominant cause of the mental injury; the amount of work stress shall be measured by actual events; a mental injury is not considered to arise out of and in the course of employment if it results from a disciplinary action, work evaluation, job transfer, layoff, demotion, termination, or similar action, taken in good faith by the employer.

Further, the statutory presumption of compensability for a physical injury claim does not apply to a claim of mental injury caused by work-related stress. AS 23.30.120(c).

To prevail, Williams had to establish by a preponderance of the evidence, without benefit of the presumption of compensability, that: (1) "the work stress was *extraordinary and unusual* in comparison to pressures and tensions experienced by individuals in a comparable work environment"; and (2) the work stress, as measured by actual events, "was the *predominant cause* of the mental injury." AS 23.30.395(17) (emphasis added).

Although the Act does not define "individuals in a comparable work environment," we accept the Board's interpretation of the phrase in this context to mean other supervisors/unit leaders in Williams's office, given that Williams does not argue that this meaning was incorrect. Ample evidence supports

---

7. In its first decision, the Board noted that Williams explained in an August 6, 1987, letter to the Supervisory Sick Leave Committee that "she and her supervisor were trying to reduce stress on her. Part-time work had been approved, her communication difficulties were partially resolved, and she was assured she could go back to her same position on her return to work."

8. Williams's work area was located next to a refrigerator, a shredder, a Xerox machine, and filing cabinets. She felt claustrophobic in such a small, crowded area where people were constantly passing by. She complained to Briggs a few months before she left; the refrigerator was moved, but nothing else was done to modify her physical environment.

the Board's finding that Williams was not under extraordinary or unusual levels of stress compared with other unit leaders at CSED. The Board based its finding on the testimony of CSED staff members who had worked with Williams. Supervisor Briggs testified that everyone's anxiety and tension increased after a 1986 audit led to federal intervention and the presence of federal regulators in the office. Everyone had to deal with the pressure of additional federal requirements, new deadlines, and increasing caseloads. Briggs testified that Williams was treated the same as other employees, and that her complaints about a poor working environment and lack of clerical support were common among supervisors at her level.

Billie Stauch had worked in the division for fifteen years and at a rank equivalent to Williams's since 1985. She testified that she believed that other unit leaders were under greater stress than Williams. Testimony demonstrated that Williams's team assignment was considered the least stressful in the division, and that Collections was considered the most stressful unit.[9]

From these facts, the Board decided that Williams failed to establish that her work stress was extraordinary and unusual and thus denied her mental injury claim. We conclude that substantial evidence supports the Board's finding that Williams did not face extraordinary or unusual stress. Because each element of the test for mental injury arising from work-related stress is mandatory, we need not consider the other elements of the test. We affirm the superior court's decision affirming the Board's denial of Williams's claim of mental injury caused by work-related stress.

### D. *The Board Erred in Denying Williams's Physical Injury Claim.*

#### 1. *The test for compensability*

■■■■■■ "Physical injury" under the Act includes the work-related aggravation or acceleration of a pre-existing disease or condition. *Thornton v. Alaska Workmen's Compensation Bd.,* 411 P.2d 209, 210 (1966).

Liability is imposed on the employer "wherever employment is established as a causal factor in the disability." *Burgess Constr. Co. v. Smallwood,* 623 P.2d 312, 317 (Alaska 1981), *reh'g granted,* 698 P.2d 1206 (Alaska 1985) (citation omitted). A causal factor is a legal cause if " 'it is a substantial factor in bringing about the harm' or disability at issue." *Id.* (citation omitted).

■■■■■■ An aggravation or acceleration is a substantial factor in the disability if it is shown that (1) "but for" the employment the disability would not have occurred, and (2) reasonable persons would regard the employment as a cause and attach responsibility to it. *Fairbanks N. Star Borough v. Rogers and Babler,* 747 P.2d 528, 532 (Alaska 1987). "[T]o satisfy the 'but for' test, the claimant need only prove ... that the aggravation, acceleration or combination was *a* substantial factor in the resulting disability." *Id.* at 533 (emphasis added). To overcome the AS 23.30.120(a) presumption of compensability, an employer must present substantial evidence that either

(1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial cause of the disability; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability.

*Gillispie v. B & B Foodland,* 881 P.2d 1106, 1109 (Alaska 1994) (citations omitted). *See also Childs v. Copper Valley Elec. Ass'n,* 860 P.2d 1184, 1189 (Alaska 1993); *Big K Grocery v. Gibson,* 836 P.2d 941, 942 (Alaska 1992). If an employer overcomes the presumption of compensability, the employee has the burden of proving all of the elements of her claim by a preponderance of the evidence. *Norcon, Inc. v. Alaska Workers' Compensation Bd.,* 880 P.2d 1051, 1055 (Alaska 1994).

#### 2. *The Board's decisions*

The Board noted in its first decision that substantial evidence linked Williams's physical ailments to work-related stress. It observed that "[t]here is an abundance of evidence that leads to the conclusion" that

---

**9.** Williams admits on appeal that she did not want to work in Collections.

work-related stress aggravated Williams's pre-existing gastrointestinal condition. The superior court, in its decision on appeal after remand, noted that "all of [Williams's] treating health care providers opined that work stress did constitute such a substantial factor."

We note here just a sample of this evidence: (1) Dr. Steer's July 30, 1987, letter in which he stated that Williams's stress-related medical illness would not abate without rest away from the office; (2) a statement in Dr. Kappes's August 2, 1991, report that "it appears work stressors have exacerbated health issues which further impaired her ability to function accordingly and appears responsible for her early retirement due to health reasons"; (3) Dr. Buchanan's statement that

> In further questioning about her job stresses it seems clear that with increased job stresses, deadlines, responsibilities, etc. symptoms predictably increase to the point of incapacity. Because of the exacerbation of stress related symptoms it appears to be no longer possible for her to work at her current job, or in similar jobs, with a like amount of stress.

and (4) a letter from Mary Davis, M.S., a counselor who began treating Williams in October 1988, stating that

> She has had some difficulty functioning on her job for the past several years, but problems have increased in severity in recent months.... As her therapist, I see her depression and anxiety symptoms increase in proportion to the stress she reports with her job and with the accompanying physical problems.

The Board found in its first decision that although Williams had made out a prima facie case of aggravation of a pre-existing physical condition sufficient to raise the statutory presumption of compensability, the State had overcome the presumption by producing substantial evidence that her disability was not work-related. The Board then concluded that Williams had not proven all elements of her case by a preponderance of the evidence.

The superior court reversed the Board's denial of the physical injury claim and remanded for findings of fact to support the Board's holding that Williams had failed to prove her claim by a preponderance of the evidence.

On remand, the Board held in its second decision that "there is a lack of evidence showing Williams's gastrointestinal condition became worse because of work-related stress." It found that "while Williams might have focused [on] work stress as the factor which caused her disability, the primary, underlying cause of her physical condition was depression and anxiety." "[I]n light of the whole record," the Board found that work-related stress was "not substantial enough to be 'a' factor in bringing about" Williams's physical condition. Concluding that she had not proven her physical injury claim by a preponderance of the evidence, it again denied that claim.

### 3. *Rebutting the presumption*

■ Noting that the Board found in its first decision that "[t]here is an abundance of evidence that leads to the conclusion" that "work-related stress from working at CSED aggravated her preexisting gastrointestinal condition," Williams argues that the statutory presumption attached, and that it was error to hold that the State rebutted the presumption.

■ Because the Board found that the statutory presumption applies to Williams's claim that her employment aggravated her pre-existing condition, we consider whether the State offered substantial evidence rebutting that presumption. *See Gillispie*, 881 P.2d at 1109. An employer may rebut the presumption either by presenting affirmative evidence that the injury is not work-connected or by eliminating all possibilities that the injury was work-connected. *Childs*, 860 P.2d at 1189. The employer can satisfy the former method by offering an expert opinion that the claimant's work was probably not a substantial cause of the disability. *Id.* (citing *Big K Grocery*, 836 P.2d at 942).

In this case, the State satisfied neither method. First, it did not offer affirmative evidence either that the work was not a substantial cause of Williams's present condi-

tion or that the work did not aggravate her prior condition. Second, it did not offer evidence eliminating all possibilities the injury was work-connected.

In finding in its first decision that the State had overcome the presumption, the Board relied exclusively on the testimony of Dr. Buchanan. The Board noted that Dr. Buchanan: (1) testified that Williams's chronic irritable bowel syndrome "was not predominantly caused by her work" and that she had suffered from a chronic bowel condition for the past fifteen years; (2) testified that the illness wasn't "really a job-related illness; it's really a genetic illness and an emotional illness"; (3) testified that work-related stress "was a major factor in the employee's having to quit her job in 1990," even though he also testified that "a major factor is not a substantial factor"; but (4) was unwilling to apportion a percentage of responsibility to the State for this permanent partial impairment rating of Ms. Williams at twenty-five percent of the whole person.

Based on this evidence, the Board concluded that CSED had overcome the presumption of compensability, and that the burden shifted to Williams to prove her claim by a preponderance of the evidence. The Board concluded that Williams failed to meet her burden of proof, and thus denied her claim.

On appeal the superior court agreed with the Board that there was "substantial evidence" that Williams's condition was not work-related. It noted that Dr. Buchanan and Mary Davis and other medical personnel "testified that the nature of the pre-existing condition and the other stressors in [Williams's] life were significant factors in producing her physiological injury." The superior court concluded that this showing was sufficient to shift the burden back to Williams, i.e., evidence rebutted the presumption of compensability.

Neither Dr. Buchanan's testimony nor the evidence of "other stressors in Williams's life" noted by the superior court satisfies the *Childs* test. 860 P.2d at 1189. Dr. Buchanan did not express an affirmative opinion that

Williams's current condition was not work-related. Nor did he eliminate all possibilities that her condition was work-connected. On the contrary, Dr. Buchanan's testimony can only be understood as supporting Williams's position.

### a. *Dr. Buchanan's testimony*

First, Dr. Buchanan expressed the opinion although work-related stress was "a major factor" contributing to her condition, a "major factor" was not "a substantial factor." His testimony establishes, however, that he did in fact consider work-related stress to be "a substantial factor"—as that term is properly used in workers' compensation cases—in the aggravation of Williams's physical ailments. He misconstrued the legal meaning of the term "substantial factor," and imported an exclusivity requirement into the term where none exists in workers' compensation law.[10] He testified:

> The problem is in the definition · of the word substantial. And I think that's the whole case, to my way of thinking. Clearly [work-related stress] was a factor. I've already said that in print.
>
> . . . .
>
> Whether that was a substantial one, by the definition that you said, I—I don't know. Because it implies exclusively—I mean, the implication is exclusively this job did it and not other jobs.
>
> . . . .
>
> I think the job that she was in was a factor, an important factor. But the real problem for the board is to decide if any job was a factor and therefore would that reduce the importance of the job she was in or was it—did it meet the criteria for substantial, which would be exclusive of other jobs.

He also stated:

> [T]here seemed to be a relationship between the job stresses—a fairly clear consistent temporal relationship between job stresses and symptoms. And when the job

---

10. Dr. Buchanan acknowledged that he was out of the realm of his expertise in the debate over the definition of "substantial": "I'm a medical doctor. Why do I have to be a semantics expert?"

stresses went away, the symptoms improved but were still present.

Absent the semantical confusion, Dr. Buchanan's testimony unequivocally supports Williams's claim.[11] It cannot be interpreted as substantial evidence rebutting the presumption of compensability.

That Dr. Buchanan also testified that he believed that Williams's chronic irritable bowel syndrome "was not predominantly caused by her work" is of little significance given the fact that we understand his testimony to convey the opinion that her CSED job was a substantial factor in bringing about her condition.

Although Dr. Buchanan presented an alternative explanation—that genetics and emotional factors played a significant role in her illness—he did not eliminate all possibilities that the injury was work-connected. *Veco, Inc. v. Wolfer*, 693 P.2d 865, 872 (Alaska 1985). This court has held that "medical testimony cannot constitute substantial evidence if it simply points to other possible causes of an employee's injury or disability, without ruling out work-related causes." *Childs*, 860 P.2d at 1189.

Taken as a whole, Dr. Buchanan's testimony can only be understood as positing that, although Williams's job at CSED was not a predominant cause of her disability and nonwork-related factors contributed to her disability, her CSED job was a substantial factor in bringing about her condition. Dr. Buchanan's testimony thus fails to satisfy either method of rebutting the presumption of compensability under *Childs*.

### b. *Other evidence*

In agreeing with the Board that CSED had overcome the presumption of compensability, the superior court noted that

Both Dr. Buchanan and Mary Davis, as well as other medical personnel, testified that the nature of the pre-existing condition and other stressors in appellant's life were significant factors in producing her physiological injury.

We have noted that it is not a sufficient "alternative explanation" for the employer merely to point to other factors that likely aggravated a pre-existing condition. *Childs*, 860 P.2d at 1189.

Other evidence noted by the Board in its decision on remand likewise fails to satisfy the *Childs* test. In deciding whether Williams had proven her physical injury claim by a preponderance of the evidence, the Board noted testimony and reports from Williams's treating psychologists about the substantial personal stressors in her life. Further, the Board noted that Williams was the source of much of the information on which witnesses relied in forming opinions supporting Williams's claim; however, the Board made no finding that Williams was not a credible or reliable reporter.

In sum, CSED did not present substantial evidence that sufficiently excludes, either affirmatively or negatively, work-related factors as a substantial cause of Williams's disability. It did not offer evidence that other factors were the *exclusive* cause of her aggravated condition, nor has it offered evidence that her work at CSED was not *another* causal factor.

Because the Board erred in finding that the State rebutted the presumption, it then erred in considering whether Williams proved her physical injury claim by a preponderance of the evidence.

. . .

Dr. Buchanan's testimony thus supports Williams' position that the injury here—not the original illness but the aggravation thereof—resulted in substantial part from work-related stress.

In its decision on appeal after remand, the superior court faulted the Board "for once again misconstruing Dr. Buchanan's unwillingness to use the term 'substantial factor,' when in context there can be no question that Dr. Buchanan found that work stress was a substantial factor."

---

11. In its decision on appeal, the superior court reasoned that

Buchanan's unwillingness to call work-related stress a "substantial factor" was clearly predicated on his insistence on interpreting the term "substantial factor" to mean that only the CSED job, as opposed to another job that Williams might theoretically have had, would have occasioned this stress. Buchanan acknowledged several times that Williams' work was a "major" and an "important" factor in bringing about her stress and the resultant physical problems she suffered.

## IV. CONCLUSION

We AFFIRM the superior court's decision that Williams's claims are not time-barred under AS 23.30.100(a). We also AFFIRM the superior court's decision affirming the Board's denial of Williams's mental injury claim. We REVERSE the superior court's decision affirming the denial of Williams's physical injury claim because we conclude that the State did not overcome the presumption of compensability. We REMAND with instructions to remand to the Board to determine the benefits due on Williams's claim her employment aggravated her preexisting gastrointestinal condition.