**J.L. HODGES, Appellant,**

v.

**ALASKA CONSTRUCTORS, INC., CIG-NA/ALPAC/INA Companies, and Alaska Workers' Compensation Board, Appellees.**

No. S–7815.

Supreme Court of Alaska.

April 17, 1998.

Arthur L. Robson, Robson Law Office, Fairbanks, for Appellee.

Robert J. McLaughlin, Mann, Johnson, Wooster & McLaughlin, P.S., Tacoma, WA, for Appellees.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

FABE, Justice.

I. *INTRODUCTION*

J.L. Hodges suffered a lower back injury while working for Alaska Constructors. The Workers' Compensation Board awarded him permanent total disability benefits. Hodges then sought reimbursement for an array of expenses that flowed from his injury and subsequent workers' compensation proceedings. The Board denied his request to modify its previous orders. The superior court affirmed the Board's decision, and Hodges appeals. With one exception, we conclude

that the Board appropriately denied Hodges's petition for modification and resolved the issues before it. We remand in order for the Board to determine the costs of Hodges's attendance at medical depositions and whether his attendance was necessary and hence compensable.

## II.  FACTS AND PROCEEDINGS

Hodges suffered a lower back injury while working for Alaska Constructors on June 6, 1977.[1] He underwent a series of seven back surgeries and was awarded permanent total disability benefits. The Alaska Workers' Compensation Board (the Board) has issued five decisions in connection with Hodges's back injury.[2]

We briefly summarize the facts from the relevant proceedings. In *Hodges III,* the Board increased Hodges's compensation rate to reflect fringe benefits that Hodges was receiving at the time of his injury. The Board also ruled that Alaska Constructors would pay the cost of any medical prescriptions provided by an agreed-upon mail-order service. Additionally, the Board denied Hodges's request for reimbursement for chiropractic treatment of his upper back ailments. The Board found these treatments to be unrelated to Hodges's lower back injury and surgeries, and therefore not compensable. Finally, the Board awarded attorney's fees to Hodges, but denied his request for penalties against Alaska Constructors for late payment.

Hodges did not seek judicial review of the *Hodges III* decision. Instead, he filed an application for adjustment of claim with the Board in June 1992, almost ten months after the Board's decision. Hodges sought to re-address the following issues: compensability of his upper back condition; reimbursement for medication not acquired through the mail-order program; travel costs associated with medical treatments; attendance at appellate proceedings, pre-hearing conferences, and

depositions; compensation for a therapeutic bed and hot tub; and the award of attorney's fees, costs, and interest.

The Board treated Hodges's application for adjustment as an application for modification based on mistake or change of circumstances. After a hearing, the Board issued its *Hodges IV* decision in January 1994, resolving most of the travel-related issues. The parties and the Board agreed to treat *Hodges IV* as interlocutory and Hodges was allowed additional time to file supplemental documentation concerning his other challenges to the *Hodges III* decision.

In May 1995 the Board held a hearing to address Hodges's remaining issues. In *Hodges V* the Board ruled that Hodges had failed to justify a modification regarding compensability of his upper back condition. Because the upper back injury was not compensable, the Board ruled that the employer was not responsible for payment of travel expenses associated with treatment of that injury. The Board also denied Hodges reimbursement of medication that he did not purchase through his mail-order drug supply company. The Board then ruled that reimbursement for Hodges's travel to depositions was not warranted because Hodges had failed to provide the Board with a list of travel costs.

Finding that Hodges's hot tub treated his entire back, not all of which was compensable, the Board ordered that the employer reimburse Hodges only $4,640 of the approximately $15,000 that Hodges had spent on the installation of a gazebo-covered hot tub. For similar reasons, the Board found that Hodges's therapeutic needs did not require a king-size therapeutic bed. The Board ordered Alaska Constructors to reimburse Hodges the cost of a queen-size therapeutic bed. Finally, the Board denied penalties for late payment of the bed and hot tub expenses and granted Hodges forty hours' worth of attorney's fees totaling $5,000.

---

1. Hodges suffered a less debilitating back injury at the same workplace in April 1977. He also sought chiropractic treatment between early 1975 and April 1976 after suffering a back sprain while working for Bechtel Corporation.

2. *See Hodges v. Alaska Constructors, Inc.,* AWCB Decision No. 90–0030 (Feb. 27, 1990) (*Hodges I* ); No. 90–0083 (Apr. 25, 1990) (*Hodges II* ); No. 91–0028 (Aug. 23, 1991) (*Hodges III* ); No. 94–0011 (Jan. 27, 1994) (*Hodges IV* ); No. 95–0157 (June 8, 1995) (*Hodges V* ).

Hodges appealed the final decision and order of the Board in *Hodges V* to the superior court, which affirmed the decision in its entirety. Hodges appeals.

### III. *DISCUSSION*

#### A. *Standard of Review*

■ This court does not give deference to the decision of a superior court acting as an intermediate court of appeal. *See Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992). Instead, we "independently review the merits of an administrative determination." *Id.*

■ "When an administrative decision involves expertise regarding either complex subject matter or fundamental policy formulation, we defer to the decision if it has a reasonable basis." *Keane v. Local Boundary Comm'n*, 893 P.2d 1239, 1241 (Alaska 1995). The scope of review for an agency's application of its own regulations to the facts is limited to whether the agency's decision was arbitrary, unreasonable, or an abuse of discretion. *See Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982).

■ The substitution-of-judgment standard is appropriate "where the knowledge and experience of the agency is of little guidance to the court or where the case concerns 'statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge.'" *Earth Resources Co. v. State, Dep't of Revenue*, 665 P.2d 960, 965 (Alaska 1983) (quoting *Kelly v. Zamarello*, 486 P.2d 906, 916 (Alaska 1971)).

■ We employ the substantial evidence test "to review factual determinations made by an agency in the course of its proceedings." *Jager v. State*, 537 P.2d 1100, 1107 (Alaska 1975). We have held that

[s]ubstantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." The Board's decision need not be the only possible solution to the problem, for it is not the function of the court to reweigh the evidence or choose between competing inferences, but only to determine whether such evidence exists.

*Interior Paint Co. v. Rodgers*, 522 P.2d 164, 170 (Alaska 1974) (footnotes omitted).

#### B. *Timeliness of the Application for Modification*

■ As a preliminary matter, we address Alaska Constructors's contention that Hodges's application for adjustment failed to meet the statutory and regulatory requirements governing modification of Board orders. First, Alaska Constructors argues that Hodges's application for adjustment was not filed within the one-year time limit prescribed by AS 23.30.130.[3] It complains that the Board only decided to treat Hodges's application for adjustment as a petition for modification after more than a year passed from the decision in *Hodges III*.

The record indicates, however, that Hodges filed an application for adjustment of claim on June 8, 1992, less than one year after the decision in *Hodges III* was issued on August 23, 1991. It is this date that controls under AS 23.30.130.[4] Moreover, the Board "acts within its jurisdiction with respect to modification of the original claim when it decides whether the limitations period has run." *Hulsey v. Johnson & Holen*, 814 P.2d 327, 328 (Alaska 1991).

■ Second, Alaska Constructors contends that the application for adjustment is not the functional equivalent of a petition for modification. The Board's action was appropriate, however, because it has discretion to review an award of compensation "[u]pon its

---

3. AS 23.30.130 provides, in relevant part:
   (a) Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions ... or because of a mistake in its determination of fact, the board may, before one year after the date of the last payment of compensation benefits ... or before one year after the rejection of a claim, review a compensation case....

4. Alaska Constructors's argument that this court's consideration is barred under the doctrines of issue and claim preclusion is equally unpersuasive. Because the Board is statutorily authorized to rehear and modify an award, *res judicata* does not apply. *See Suryan v. Alaska Indus. Bd.*, 12 Alaska 571, 573 (D.Alaska 1950).

own initiative, or upon the application of any party in interest." AS 23.30.130(a). We have upheld similar Board action in the past. *See Hulsey*, 814 P.2d at 328 (concluding Board correctly treated petition to "reopen" claims as petition for modification); *see also Metcalf v. Felec Servs.*, 784 P.2d 1386, 1387 (Alaska 1990) (noting that Board treated request for reconsideration as petition to modify award).

### C. *Compensability of the Upper Back Condition*

■ Following *Hodges IV*, and upon stipulation of the parties, Hodges was given additional time to submit evidence to demonstrate a link between his 1977 accident and his upper back problems for which he sought compensation. In *Hodges V*, the Board found that

> [t]he employee has failed to submit any evidence to indicate the employee did not have upper back problems prior to the 1977 accident or that the 1977 accident aggravated or accelerated the preexisting conditions.[ ]
>
> Furthermore, much of the evidence the employee submitted in response to our request in *Hodges IV*, was not presented at the hearing prior to *Hodges III*. Since the evidence is new, the employee is required to state the reason why, with due diligence, the new evidence could not have been produced at the time of the hearing.... The employee has failed to do so.

Hodges proposes a variety of arguments to explain why the Board's decision is flawed. Hodges claims that the Board placed insufficient weight on the opinions of his treating physicians and ignored "exceptionally voluminous" evidence that supports these doctors' conclusions. Hodges points to a number of depositions and medical reports, some of which link his lower back injury to his upper back problems, and he argues that the Board erred by finding to the contrary.

Alaska Constructors claims that Hodges did not satisfy the prerequisite of 8 Alaska Administrative Code (AAC) 45.150(d)(2) (1996) that a party moving for modification explain why newly submitted evidence was not available at the prior hearing.[5] Alternatively, Alaska Constructors contends that none of the evidence submitted with the petition for modification tends to show a causal link between Hodges's upper back problems and his June 6, 1977 accident.

We conclude that the Board properly denied Hodges's request for modification because Hodges failed to explain why "newly discovered evidence supporting the allegation could not have been discovered and produced at the time of the hearing." 8 AAC 45.150(d)(2). We have consistently held that an allegation of mistake should not serve as "'a back-door route to retrying a case because one party thinks he can make a better showing on the second attempt.'" *Interior Paint Co.*, 522 P.2d at 169 (quoting 3 Arthur Larson, *The Law of Workmen's Compensation* § 81.52, at 354.8 (1971)); *cf. Burrell v. Burrell*, 696 P.2d 157, 163 (Alaska 1984) (holding that motion for relief from judgment under Civil Rule 60(b) does not allow for relitigation of issues previously adjudged).

It is apparent from the record that Hodges sought to relitigate the issues with evidence that could have been submitted prior to the Board's decision in *Hodges III*. The bulk of Hodges's new evidence consists of depositions taken in 1993 relating to medical diagnosis and treatment that had occurred years earlier.

Hodges failed to explain adequately why the evidence could not have been produced at the time of the hearing that preceded the Board's decision in *Hodges III*. The only explanation Hodges offered the Board for failing to introduce this evidence sooner is contained in two sentences of an affidavit that Hodges's attorney submitted:

> and, if a party has newly discovered evidence, an affidavit from the party or the party's representative stating the reason why, with due diligence, the newly discovered evidence supporting the allegation could not have been discovered and produced at the time of the hearing....

---

**5.** 8 AAC 45.150(d) states:
> A petition for a rehearing or modification based on an alleged mistake of fact by the board must set out specifically and in detail
> ....
> (2) the facts alleged to be erroneous, the evidence in support of the allegations of mistake,

That your affiant could not produce or introduce evidence at the July 1991 hearing, which evidence was developed by following procedure adopted by affiant. The wisest and best way was to file the application with the Board (which was in fact filed) in June of 1992.[6]

Therefore, we hold that the Board acted within its province in denying modification of its previous decision concerning the compensability of Hodges's upper back condition.[7]

Our holding here resolves Hodges's claim for reimbursement for travel related to medical treatment. Under 8 AAC 45.084, the employer is responsible for paying transportation expenses for an employee's travel to receive medical treatment for work-related injuries. Because we affirm the Board's determination that Hodges's upper back condition is non-compensable, reimbursement for travel costs associated with treatment of that condition is inappropriate.

### D. Reimbursement of Prescription Medication

■ Hodges contends that he should have been reimbursed for his purchases of Fentanyl Patches, prescribed to manage Hodges's pain, and that the Board was mistaken in deciding otherwise. Alaska Constructors argues that the Board reasonably determined

that Hodges failed to meet the requirement of showing factual errors or mistakes of law made by the Board.

By the terms of the decision in Hodges III, Hodges was to fill all of his prescriptions through a mail-order drug supply company. Despite the company's statement to the contrary, Hodges maintained that it was illegal to send narcotic pain medication through the mail. Though Hodges's drug supply company could not use the postal mail to send a class-II narcotic such as Fentanyl interstate, it could legally use other shipping methods to do so.

In his application for modification, Hodges stated that he learned in 1993 that his drug supply company could deliver class-II narcotics. The Board, however, found that Hodges was made aware as early as 1991 that his company used alternatives to the postal mail system. The Board held in Hodges V that Hodges was dilatory in acquainting himself with the mail-order service and that Hodges

failed to demonstrate any erroneous facts in Hodges III or any changes in condition since that decision, as related to the prescription medication. We further find [Hodges's] mistaken belief on the law is not proper grounds for a determination of modification.

6. When asked at oral argument before this court why he did not appeal Hodges III, Hodges's attorney replied:

> To be candid, at the time where we would lose on the appeal, because of the palliative issue, I didn't feel that was worthwhile. Secondarily, I felt that if they are not going to rely on the little reports that come in, I had better augment it. I did a televised deposition, got all the records, everything else, put the whole thing there and my philosophy was to push the Board to pay attention. Tried, it obviously didn't work.
>
> . . . .
>
> Rather than appeal forthwith, I would take the opposite route in which I have a year to pile the evidence in, do things like take the deposition of Dr. Oakley and get his records, and take other depositions which I proceeded to do and then ask the Board to consider the generic situation: is the upper back injury compensable?

7. As a result, it is unnecessary for us to address whether the Board's decision was supported by

substantial evidence. We also reject Hodges's argument that the resolution of this matter is guided by our recent opinion in Williams v. State, Department of Revenue, 938 P.2d 1065 (Alaska 1997), decided after both parties had filed their briefs, but before Hodges had filed his reply brief. Williams does not establish new law. Rather, it clarifies our prior holdings regarding the statutory presumption of compensability. See Gillispie v. B & B Foodland, 881 P.2d 1106 (Alaska 1994); Childs v. Copper Valley Elec. Ass'n, 860 P.2d 1184 (Alaska 1993); Big K Grocery v. Gibson, 836 P.2d 941 (Alaska 1992). Hodges did not raise the presumption issue in his petition for adjustment, nor did he appeal the Hodges III decision to the superior court. At no time after Hodges III did Hodges raise the presumption issue in his points on appeal. "A point omitted from appellant['s] Statement of Points on Appeal ordinarily will not be considered by this court." Forquer v. State, Commercial Fisheries Entry Comm'n, 677 P.2d 1236, 1241 n. 4 (Alaska 1984). "Attention to the issue in a reply brief does not resuscitate it." Braun v. Alaska Commercial Fishing and Agric. Bank, 816 P.2d 140, 145 (Alaska 1991).

We agree with the Board's reasoning. Hodges failed to explain which facts supported his allegation of mistake of fact, as required by 8 AAC 45.150(d)(2). While Hodges argued in his request for modification that the Board made a mistake in requiring him to obtain his prescription medications "in contravention of Federal or State law," this was not the case. Therefore, we conclude that the Board did not err in denying Hodges reimbursement for medication not ordered through the mail-order service.

### E. Reimbursement for Hodges's Therapeutic Hot Tub and Bed

In *Hodges IV*, the Board found Hodges's request for the provision of a therapeutic bed and hot tub to be compensable. It required Hodges to submit records detailing his costs and evidence that he had submitted those costs to his employer. After reviewing that evidence, and that of the employer in rebuttal, the Board in *Hodges V* ruled that Hodges's purchases were excessive and required Alaska Constructors to pay only a reasonable, specified portion of the costs. Hodges appeals.

#### 1. The hot tub

Hodges submitted bills totaling approximately $15,000 for the purchase and installation of a gazebo-covered, outdoor hot tub.[8] Alaska Constructors proffered evidence that an alternative bathtub whirlpool could have been installed in Hodges's home for a total cost of only $4,640. After examining the testimony of Joyce Heisler, a hot tub vendor, and Dr. D.L. Hill, the chiropractor who prescribed the hot tub, the Board ruled that reimbursement for the hot tub should be limited to $4,640. The Board concluded:

> We recognize Ms. Heisler and Dr. Hill both believe the employee should have a deep tub with water jets placed for adjustment to a number of body parts. We find, however, that both witnesses made this determination based on the employee's entire back problems, particularly his upper back. We have already found that the employee's upper back problems are not compensable under this claim. Therefore, we find any hot tub ordered under this claim, would not need to treat the upper back. Since the tub costing $4,640.00 adequately treats the lower back, we find such a tub reasonable.

Hodges argues that he should have been fully reimbursed for the hot tub he purchased. Alaska Constructors maintains that the Board correctly decided the issue.

The Board's decision was supported by substantial evidence. In his deposition, Dr. Hill commented on Hodges's purchase of the outdoor hot tub and whether it conformed to the prescription he had written for him: "It is more than I had in mind, to be honest with you. When I wrote the prescription, I didn't envision ... the patient building a gazebo and spending 14,000." [9]

Furthermore, the record supports the Board's finding that the experts' testimony was based upon the faulty assumption that Hodges's upper back treatment was compensable. Dr. Hill remarked that the requirements of a beneficial hot tub included that "he could immerse up to his neck in it." Heisler commented that the alternative proposed by Alaska Constructors might not be as comfortable because Hodges would not receive a benefit to all parts of his body, including the upper neck.

The Board is authorized to choose between conflicting medical testimony and reports. The function of the courts is not to reweigh the evidence or to choose between competing inferences, but only to determine whether substantial evidence exists. *See Interior Paint Co.*, 522 P.2d at 169–70. There is substantial evidence supporting the inferences drawn by the Board with regard to the extravagance of Hodges's purchase. Therefore, we conclude that the

---

8. The total cost for the outdoor hot tub was $14,575.13. Hodges spent $5,694 on the apparatus and approximately $9,000 to lay cement and provide electric power to his backyard where the hot tub was installed.

9. Additionally, the record reveals that Hodges could have purchased a nearly identical gazebo-covered hot tub unit for $3,733.89, at a savings of approximately $2,000.

Board's determination of this issue was not in error.

### 2. The therapeutic bed

■■ Hodges spent $2,950 on a king-size therapeutic bed. He contended that he needed that size because he was married at the time of his purchase. He argues that the king-size bed was the only size with independent adjustments for the two sides. Alaska Constructors contends that for $1,000 less, Hodges could have purchased a smaller bed that would have been adequate for his medical needs.

The Board relied on Dr. Hill's comment that size is not that important to the bed's therapeutic effect, and required Alaska Constructors to reimburse Hodges the cost of a queen-size therapeutic bed of similar quality. Hill's testimony constitutes substantial evidence in support of the Board's decision. We therefore conclude that the Board did not err in finding that a queen-size therapeutic bed would adequately serve Hodges's medical needs.

### F. Reimbursement for Travel Costs to Attend an Appellate Proceeding, Prehearing Conferences, and Depositions

■■ Hodges challenges the Board's denial of reimbursement for his travel to the superior court hearings, three pre-hearing conferences, and medical depositions. He argues that he qualified for reimbursement of these expenses under 8 AAC 45.180(f).[10]

Subsection (a) of 8 AAC 45.180 states that "[t]his section does not apply to fees incurred in appellate proceedings." The regulation does not mention costs, but such an interpretation would not be unreasonable. As Alaska Constructors contends, Alaska Appellate Rule 508(d) governs the award of costs associated with appellate proceedings in the su-

perior court.[11] Therefore, the Board did not abuse its discretion when it denied Hodges's claim for reimbursement for travel expenses to attend appellate hearings in the superior court.

The Board's decision to deny travel reimbursement for Hodges's attendance at three pre-conference hearings was based upon the Board's reasonable interpretation of existing regulations. Subsection (f)(13) of 8 AAC 45.180 provides that in the Board's discretion, "reasonable travel costs incurred by an applicant to attend a hearing" will be awarded "if the board finds that the applicant's attendance is necessary." In *Hodges IV*, the Board found that Hodges's "physical attendance at the prehearing was not necessary." Having reviewed the record, we conclude that the Board's finding on this issue was not erroneous.

■■ Finally, Hodges challenges the Board's denial of his claim for reimbursement for travel to medical depositions. Subsection (g) of 8 AAC 45.180 generally provides that costs incurred for travel to depositions may only be awarded if attendance at the deposition is reasonable. Before determining whether to reimburse Hodges for his travel costs, the Board in *Hodges IV* requested that Hodges submit a list of depositions for which he claimed compensation and a description of his participation and the reasons for his attendance. Hodges provided this list, the necessary discussion, and an introduction stating that the total costs for all depositions attended "probably does not total $200." However, noting that Hodges had failed to itemize the travel costs and produce an affidavit stating that the costs were incurred in connection with his deposi-

---

**10.** 8 AAC 45.180(f) provides in part:
The applicant must file a statement listing each cost claimed, and must file an affidavit stating that the costs are correct and that the costs were incurred in connection with the claim....

**11.** Appellate Rule 508(d) provides:
When costs are awarded in the appellate court, they shall include, unless the court otherwise

orders and subject to Rules 210(b)(6) and (c)(6), the filing fee, the costs of preparing the transcript, premiums for any bond under Rule 204(c) or 204(d), and the costs of duplicating and mailing briefs and excerpts of records. Duplicating costs will not be awarded in excess of the rate generally charged by printers in the city in which counsel is located.

tions, as required by 8 AAC 45.180(f), the Board denied Hodges's request.

In *Hodges IV*, the Board requested only that Hodges submit a list of depositions and a description of his participation, without mention of the regulatory requirement that Hodges submit itemized costs and an affidavit. Hodges complied with this request. Given the specificity of its earlier order and Hodges's subsequent compliance, the Board should have provided Hodges with notice and an additional opportunity to satisfy the requirements of 8 AAC 45.180(f) by submitting the necessary itemization and affidavit. We therefore remand this issue to the Board to allow Hodges to submit a list of travel costs in accordance with the regulation. The Board should determine whether Hodges's attendance was reasonable and hence compensable.

## IV. CONCLUSION

We AFFIRM the Board's decisions in *Hodges IV* and *Hodges V* in all respects except the denial of Hodges's claim for reimbursement for travel to medical depositions, and we REMAND that issue for proceedings consistent with this opinion.