Judy L. DeYONGE, Appellant,

v.

NANA/MARRIOTT and Alaska National Insurance Company, Appellees.

No. S–9060.

Supreme Court of Alaska.

April 21, 2000.

Charles W. Coe, Anchorage, for Appellant.

Theresa Hennemann and William W. Whitaker, Holmes, Weddle & Barcott, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

This case presents the question of whether a worker who suffers increased symptoms due to the physical requirements of her job is entitled to workers' compensation. Judy DeYonge, who had a preexisting arthritic condition, claims that working as a housekeeper for NANA/Marriott aggravated her condition to the point where she could no longer perform her job. The Workers' Compensation Board denied her claim for benefits and compensation because it concluded that, although her symptoms may have worsened as a result of her job, her underlying condition did not. Because we have rejected the distinction between aggravation of symptoms and aggravation of the underlying impairment, we reverse the Board's decision and remand for a determination of the extent and compensability of DeYonge's injury.

## II. FACTS AND PROCEEDINGS

### A. Factual History

Judy DeYonge began working as a housekeeper for NANA/Marriott on the North Slope in 1992. DeYonge's job required her to kneel, bend, and stoop when performing such tasks as scrubbing floors or showers. DeYonge also carried buckets of water up and down flights of stairs as part of her job. In March of 1995 DeYonge informed her supervisor that she was suffering from pain in her knees. A couple of weeks later, the pain became so unbearable that DeYonge sought leave from work.

DeYonge's treating physician in Kenai, Dr. Marguerite McIntosh, initially diagnosed DeYonge with patellar tracking syndrome caused by damaged cartilage under the kneecap. Dr. McIntosh referred DeYonge to Dr. Timothy Powers for further evaluation.

Dr. Powers diagnosed DeYonge's condition as "[r]ight knee, patella femoral pain, possibly [arising from] a degenerative meniscus tear or degenerative arthritis. . . . Left knee is much the same." In Dr. Powers's opinion, DeYonge's condition "may be [due] to overuse and prolonged squatting and kneeling as described by the patient." DeYonge also informed Dr. Powers that she had been having trouble with her knees since the 1970s, and that her mother and grandmother both had rheumatoid arthritis. Dr. Powers recommended strengthening and stretching exercises for DeYonge and restricted her from kneeling, repetitively climbing stairs, and repetitively squatting. Since DeYonge was no longer working as a housekeeper for NANA/Marriott at this time, she managed to avoid such activities to a large extent.

At NANA/Marriott's request, DeYonge was next examined by Dr. Frost, an orthopedic specialist. Dr. Frost diagnosed her as having "mild bilateral arthritis, probably osteoarthritis, with some patellofemoral chondrosis." He believed that this condition had "probably been developing slowly for years," and that it "was not specifically caused by her job."

Dr. Frost did believe, however, that DeYonge's duties as a housekeeper worsened her symptoms, even if they did not actually worsen her underlying condition. He stated in his report that "[c]ertainly the type of duties which she performed as a housekeeper for NANA/Marriott would have been a sub-

stantial factor in increasing her symptoms, but not necessarily in either causing or making her condition progress any more rapidly than it might otherwise have." Also, Dr. Frost stated that although he felt that DeYonge suffered from a "legitimate permanent physical impairment," he "would not necessarily say that the impairment was caused by her work as opposed to being merely pointed out by her work."

In his recommendations, Dr. Frost believed that it would be "unwise" for DeYonge to continue working as a housekeeper. He concluded she should have "permanent restrictions against any activities which require her to do a significant amount of kneeling, squatting, twisting, jumping, climbing, or carrying greater than [twenty] pounds." He suggested that DeYonge was best suited for a "desk-type job or very light standing work .... particularly in a situation where she can intermittently rest by sitting on a stool."

### B. *Procedural History*

The Workers' Compensation Board first heard DeYonge's claim for benefits in April of 1996. The Board concluded that, through Dr. Frost's opinion, NANA/Marriott had overcome the presumption in favor of DeYonge. In reaching this decision, the Board "rel[ied] heavily on the opinion of Dr. Frost," stating that Dr. Frost "based his opinion regarding causation on the objective medical record, not the subjective complaints as described by the employee." The Board failed to address the opinion of DeYonge's treating physician, Dr. McIntosh. Ultimately, the Board concluded that DeYonge failed to prove her case by a preponderance of the evidence and therefore denied her benefits.

DeYonge appealed the Board's decision to the superior court (*DeYonge I*). Superior Court Judge Harold M. Brown determined that the Board had incorrectly applied the evidentiary standards by focusing on whether DeYonge's work *caused* her condition and failing to address whether her work *aggravated or accelerated* it. Judge Brown therefore remanded the case and directed the Board to apply the substantial factor test to DeYonge's aggravation claim. Additionally, Judge Brown determined that the Board

erred in failing to discuss Dr. McIntosh's medical opinion. Thus, Judge Brown directed the Board to "modify its decision to include at least a cursory discussion of all significant evidence, particularly expert medical testimony, and the ... reasons for giving greater or lesser weight to that evidence."

Prior to the hearing on remand, DeYonge requested that the same Board panel decide the case and that she be allowed to introduce new evidence. The Board dismissed DeYonge's request to introduce additional evidence and granted her request to empanel the same Board members.

At the hearing on remand, the Board addressed DeYonge's underlying claim for compensation and medical benefits, employing the "substantial factor" test in compliance with the superior court's order. In applying this test, the Board found that DeYonge failed to prove "but for" causation on aggravation, and that even if she did, NANA/Marriott rebutted the presumption through Dr. Frost's opinion that DeYonge's work did not aggravate her underlying condition. The Board based this conclusion on the premise that a job must worsen the worker's underlying condition—not merely the symptoms of that condition—in order to be compensable. The Board then found that DeYonge failed to prove her claim by a preponderance of the evidence. Thus, it denied DeYonge's claim for compensation, medical benefits, and legal fees and costs.

DeYonge then appealed the Board's decision to deny her a new evidentiary hearing as well as its decision to deny her compensation and benefits (*DeYonge II*). Judge Sigurd E. Murphy for the superior court concluded that the Board correctly denied DeYonge's request to present new evidence, but improperly required DeYonge to prove "but for" causation on aggravation. Judge Murphy ultimately concluded that although DeYonge established the preliminary link, NANA/Marriott produced substantial evidence to rebut the presumption. The superior court thus affirmed the Board's conclusion that DeYonge "was not disabled by her work with the employer" and affirmed the denial of her benefits claim. DeYonge appealed to this court shortly thereafter.

## III. STANDARD OF REVIEW

When the superior court has acted as an intermediate court of appeal, we independently review the merits of the administrative determination.[1] We review the administrative agency's findings to determine whether they are supported by substantial evidence.[2] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]

The Board has the sole power to determine the credibility of witnesses.[4] Thus, even where there is conflicting evidence, the reviewing court will uphold the Board's decision if it is supported by substantial evidence.[5] It is not this court's role to reweigh the evidence.[6]

Finally, we review the Board's exclusion of evidence on remand for an abuse of discretion.[7] "An abuse of discretion exists only if the reviewing court is left with the definite and firm conviction, after reviewing the whole record, that the [Board] erred in its [finding]."[8]

## IV. DISCUSSION

### A. Background: Legal Framework Under the Alaska Workers' Compensation Act

The Alaska Workers' Compensation Act presumes that an employee's claim is compensable.[9] Applying this statutory presumption requires a three-step analysis.[10] First, the employee must establish the preliminary link between her employment and her alleged injury.[11] Once the employee establishes that link, it is the employer's burden to overcome the presumption of compensability by coming forward with substantial evidence that the injury was not work related.[12] If the employer meets this burden then the presumption disappears and the employee must prove her claim by a preponderance of the evidence.[13]

### B. The Board Erred in Finding that DeYonge Did Not Trigger the Compensability Presumption.

#### 1. The Board erred in requiring DeYonge to present substantial evidence that her job caused her injury.

The Board determined that DeYonge failed to trigger the preliminary link, concluding that she had not presented "substantial evidence" that her work caused her injury. The superior court, Judge Sigurd E. Murphy, acting as an intermediate court of appeal, correctly determined that this threshold standard set by the Board was too high. As the superior court observed, "DeYonge did not need to present substantial evidence that her employment was a substantial cause of the alleged disability." Instead, to establish the preliminary link, "an offer of 'some evidence' that the claim arose out of the worker's employment is sufficient."[14] Thus, we conclude that the Board erred in the first stage of its analysis.

1. See Tolbert v. Alascom, Inc., 973 P.2d 603, 606–07 (Alaska 1999).

2. See Grove v. Alaska Constr. & Erectors, 948 P.2d 454, 456 (Alaska 1997).

3. Id. (quoting Miller v. ITT Arctic Servs., 577 P.2d 1044, 1046 (Alaska 1978)).

4. See AS 23.30.122; Resler v. Universal Servs., Inc., 778 P.2d 1146, 1149 (Alaska 1989).

5. See Williams v. State, Dep't of Revenue, 938 P.2d 1065, 1069 (Alaska 1997).

6. See Miller v. ITT Arctic Servs., 577 P.2d 1044, 1049 (Alaska 1978).

7. See Schmidt v. Beeson Plumbing & Heating, Inc., 869 P.2d 1170, 1179 (Alaska 1994).

8. Harris v. Keys, 948 P.2d 460, 466 (Alaska 1997) (citations omitted).

9. See AS 23.30.120(a)(1); Tolbert, 973 P.2d at 610.

10. See Osborne Constr. Co. v. Jordan, 904 P.2d 386, 389 (Alaska 1995).

11. See id.

12. See Burgess Constr. Co. v. Smallwood, 623 P.2d 312, 316 (Alaska 1981).

13. See Osborne, 904 P.2d at 390.

14. Tolbert, 973 P.2d at 610 (emphasis added) (quoting Gillispie v. B & B Foodland, 881 P.2d 1106, 1109 (Alaska 1994)).

Moreover, in determining whether DeYonge established the preliminary link, the Board improperly weighed the evidence. In deciding whether a worker has triggered the presumption of compensability, the Board should consider "only evidence that tends to establish the link—competing evidence is disregarded."[15] We have observed that in determining whether the presumption attaches, the Board should not weigh witness credibility.[16] In this case, however, in finding that DeYonge failed to present substantial evidence that her employment caused her injury, the Board weighed the credibility of Drs. McIntosh, Powers, and Frost. The Board gave most weight to Dr. Frost's opinion, finding it "more plausible" and "definite" than the opinions of either Dr. McIntosh or Dr. Powers. But the Board should not have weighed the doctors' testimony at this stage of the analysis. For this reason, too, we conclude that the Board erred in its analysis of whether DeYonge triggered the presumption of compensability.

2. *DeYonge offered "some evidence" that her injury was work related, and she therefore triggered the presumption of compensability.*

Because we conclude, as a matter of law, that DeYonge did offer some evidence that her injury arose out of her employment, we need not remand for a determination of whether DeYonge triggered the presumption. In this case DeYonge's treating physician, Dr. McIntosh, supplied the requisite evidence to raise the presumption. Dr. McIntosh testified that DeYonge's job aggravated and worsened her condition. That constitutes "some evidence" that DeYonge's employment with NANA/Marriott aggravated her arthritis and is alone enough to support the preliminary link.

Although Dr. McIntosh's opinion suffices to trigger the presumption, all three doctors' opinions in fact support DeYonge's claim. Dr. Powers stated that DeYonge's knees suf-

fered from a "possible degenerative meniscus tear or degenerative arthritis," and that she had "prominent" symptoms which "may be [due] to overuse and prolonged squatting and kneeling as described by the patient." Dr. Frost stated that DeYonge's job "has caused the increase in symptoms," and that "[c]ertainly the type of duties which she performed as a housekeeper for NANA/Marriott would have been a substantial factor in increasing her symptoms." These three opinions certainly amount to "some evidence" that DeYonge's claim arose out of her employment. We therefore conclude that DeYonge triggered the presumption of compensability.

C. *The Board Erred in Concluding that NANA/Marriott Produced Substantial Evidence to Rebut the Presumption of Compensability.*

Although the Board erred in determining that DeYonge failed to trigger the compensability presumption, the Board did undertake an alternative analysis based on the assumption that the presumption attached. It was on this basis that the superior court affirmed the Board's decision to deny DeYonge's claim. In a recent decision we held that although the Board erred in failing to attach the compensability presumption to a worker's claim for compensation, it properly denied the claim by undertaking an alternative analysis and determining that the employer had rebutted the presumption in any event.[17] Thus, in that case, we concluded that the Board's failure to attach the compensability presumption was harmless.[18] We must therefore determine whether, despite its error in failing to attach the presumption, the Board appropriately concluded that NANA/Marriott rebutted the presumption through substantial evidence.

In order to rebut the presumption of compensability, the employer must produce substantial evidence that the injury was not work related.[19] The employer may do this in

15. *Id.*

16. *See id.*

17. *See Carlson v. Doyon Universal–Ogden Servs.,* 995 P.2d 224, 229 (Alaska 2000).

18. *See id.*

19. *See Tolbert,* 973 P.2d at 611.

two ways: by producing substantial evidence that

(1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial cause of the disability; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability.[20]

Thus, to rebut the compensability presumption, NANA/Marriott must produce substantial evidence that either (1) non-work-related events alone caused DeYonge's worsened condition, or (2) there was no possibility that DeYonge's work caused the aggravation.[21]

1. *The Board erred in concluding that Dr. Frost's opinion rebutted the presumption of compensability.*

 After weighing the three doctors' opinions, the Board concluded that Dr. Frost's report constituted affirmative evidence that DeYonge's condition was not "aggravated or accelerated by her work." In his report, Dr. Frost suggested that DeYonge's arthritic condition had "probably been developing slowly for years and . . . was not specifically caused by her job." He also suggested that "any stressful use of her knees would have increased her symptoms." These statements tend to demonstrate that a non-work-related factor—DeYonge's genetic predisposition for arthritis and its natural degenerative progression—caused DeYonge's underlying impairment. But we have established "that a preexisting . . . infirmity does not disqualify a claim under the work-connection requirement if the employment aggravated, accelerated, or combined with the . . . infirmity to produce the . . . disability for which compensation is sought."[22] Dr. Frost's explanation does not exclude De-Yonge's employment as a substantial factor

in the aggravation of her arthritis. On the contrary, Dr. Frost believed that DeYonge's employment with NANA/Marriott did worsen her symptoms: "Certainly the type of duties which she performed as a housekeeper . . . would have been a substantial factor in increasing her symptoms."

In his conclusions, Dr. Frost distinguished between aggravation of DeYonge's *symptoms* and aggravation of her *underlying condition*. But in *Hester v. State, Public Employees' Retirement Board*, we explicitly declined to differentiate between the aggravation of symptoms and the aggravation of an underlying condition in the context of a claim for occupational disability benefits.[23] "We reject the distinction . . . between worsening of the underlying disease process and worsening of the symptoms of a disease."[24] Noting the difficulty in separating an aggravation of symptoms from aggravation of the underlying disability, we observed that "increased pain or other symptoms can be as disabling as deterioration of the underlying disease itself."[25] Although *Hester* arose under a different statutory scheme,[26] the principle that we enunciated there—that worsened symptoms may be compensable—is equally persuasive in the context of workers' compensation.

 Thus, for an employee to establish an aggravation claim under workers' compensation law, the employment need only have been "a substantial factor in bringing about the *disability*."[27] *Hester* suggests that when a job worsens an employee's symptoms such that she can no longer perform her job functions, that constitutes an "aggravation"— even when the job does not actually worsen the underlying condition.[28]

Based on *Hester*, it was error for the Board to conclude that Dr. Frost's opinion

20. *Gillispie,* 881 P.2d at 1109 (citations omitted).

21. *See Veco, Inc. v. Wolfer,* 693 P.2d 865, 872 (Alaska 1985).

22. *Burgess Constr. Co. v. Smallwood,* 623 P.2d 312, 315 (Alaska 1981) (quoting *Thornton v. Alaska Workmen's Compensation Bd.,* 411 P.2d 209, 210 (Alaska 1966)).

23. 817 P.2d 472, 476 n. 7 (Alaska 1991).

24. *Id.*

25. *Id.*

26. *Hester* arose under the Public Employees' Retirement System, AS 39.35.

27. *Hester,* 817 P.2d at 476 n. 7 (quotations omitted).

28. Other jurisdictions agree with this approach. *See Hensley v. Washington Metro. Area Transit Auth.,* 655 F.2d 264, 274 (D.C.Cir.1981) (holding that the increased symptomatology of bus driver's psoriatic condition was due to physical trau-

rebutted the presumption of compensability. The Board acknowledged Dr. Frost's opinion that DeYonge's job worsened her symptoms. The Board stated:

> We find Dr. Frost states that the employee may have an increase in symptoms. We do not find any evidence to support a conclusion that an increase in symptoms is the equivalent of a *permanent* aggravation or acceleration of the pre-existing condition. We find that the employee temporarily experienced an increase in her symptoms, i.e., discomfort while working. In summary, we find no acceleration of the employee's pre-existing degenerative condition and we find no *permanent* worsening of her knee condition. We find no indication of work-related disability from this discomfort. We conclude the employee was not disabled by her work with the employer; therefore we must deny and dismiss her claims for benefits.

■ The Board erred by focusing on whether DeYonge suffered "a permanent aggravation or acceleration" and a "permanent worsening" of her knee condition, for DeYonge did not bring a claim for permanent total disability. DeYonge only brought claims for medical benefits and temporary total disability (TTD). And with respect to both of these claims, we only require that the employment cause a temporary increase in symptoms aggravating the disability. Because the Board failed to recognize the principle we explicitly enunciated in *Hester*, it erred in concluding that NANA/Marriott rebutted the presumption of compensability through Dr. Frost's report.

2. *NANA/Marriott also failed to rebut the presumption by offering an "alternative explanation" for DeYonge's worsened condition.*

■ NANA/Marriott also attempted to produce an alternative explanation for De-

Yonge's worsened condition. Specifically, NANA/Marriott produced evidence to suggest that DeYonge injured her knees while "working-out" on the treadmill or doing "weight work" such as leg presses. NANA/Marriott asserts that these alternative explanations for DeYonge's disability supplied the requisite "affirmative evidence"[29] that her job did not aggravate her preexisting condition. Thus, NANA/Marriott argues that even if DeYonge had raised the compensability presumption, it successfully rebutted it.

We have noted that an employer does not provide a sufficient "alternative explanation" simply by pointing to other factors that likely aggravated a preexisting condition.[30] Thus, in *Williams v. State, Department of Revenue,* although the employer presented evidence demonstrating "that genetics and emotional factors played a significant role" in the employee's illness, the employer did not "eliminate all possibilities that the injury was work-connected."[31] Because the employer "did not offer evidence that other factors were the *exclusive* cause of [the employee's] aggravated condition," nor did it produce evidence to eliminate the employee's job as "*another* causal factor [among others]," this court determined that the employee was entitled to workers' compensation.[32]

Similarly here, it may be true that DeYonge's "working-out" on the treadmill or doing "weight work" contributed to her worsened symptoms. But NANA/Marriott's attempt to attribute DeYonge's aggravation to these activities does not "eliminate all possibilities"[33] that her condition was work related. That is, this evidence does not exclude DeYonge's work as "*another* causal factor"[34]

---

ma of driving and was therefore compensable); *McDonald v. Meijer, Inc.,* 188 Mich.App. 210, 469 N.W.2d 27, 30 (1991) (holding that disability based only on increased symptoms is compensable within meaning of Michigan workers' compensation statute); *Geck v. North Dakota Workers Compensation Bureau,* 583 N.W.2d 621, 624 (N.D.1998) (stating that "[p]ain can be an aggravation of an underlying condition of arthritis").

29. *Wolfer,* 693 P.2d at 872.

30. *See Williams v. State, Dep't of Revenue,* 938 P.2d 1065, 1074–75 (Alaska 1997).

31. *Id.* at 1075.

32. *Id.* at 1075–76.

33. *Id.* at 1075.

34. *Id.*

in the aggravation of her symptoms. And we have noted that an employee is entitled to benefits whenever the work-related aggravation "is a substantial factor" in the employee's impairment, "regardless of whether a non-work-related injury could *independently* have caused" that impairment.[35]

Because NANA/Marriott did not offer evidence "that other factors were the *exclusive* cause of her aggravated condition" or that DeYonge's work "was not *another* causal factor" among others,[36] we disagree with the Board's and the superior court's determinations that NANA/Marriott rebutted the presumption of compensability. Because we reach this conclusion, we need not address whether DeYonge proved her claim by a preponderance of evidence.

### D. *Scope of Remand*

■ DeYonge asserts that she is entitled to medical and compensation benefits "at a minimum for temporary periods until her knee condition returns to its pre-work condition." We agree that she is entitled to TTD for the period during which she suffered debilitating work-related symptoms. We therefore reverse the Board's decision in that regard.

On remand, the Board should determine the amount due DeYonge under AS 23.30.185 for TTD. Our conclusion that DeYonge triggered the compensability presumption and that NANA/Marriott failed as a matter of law to rebut it moots DeYonge's request for a new evidentiary hearing on those issues. But in determining the amount of TTD due DeYonge, the Board may choose to hear new evidence or simply to rely on the existing record.[37] We also remand for an appropriate award of attorney's fees for DeYonge under AS 23.30.145.

### V. *CONCLUSION*

The Board improperly declined to apply the presumption of compensability and incor-

rectly distinguished between aggravation of symptoms and aggravation of the underlying condition. Thus, the Board's determinations regarding DeYonge's claims were erroneous. Because DeYonge successfully triggered the presumption of compensability and NANA/Marriott failed to rebut it, we REVERSE the Board's decision with respect to TTD and REMAND for a determination of the amount due DeYonge in benefits, compensation, and attorney's fees.

---

**35.** *Tolbert,* 973 P.2d at 612 (internal punctuation and quotations omitted).

**36.** *Williams,* 938 P.2d at 1075.

**37.** AS 23.30.135(a) authorizes the Board to "conduct its hearing in the manner by which it may best ascertain the rights of the parties."