Mark McKITRICK, Appellant,

v.

STATE of Alaska, PUBLIC EM-
PLOYEES RETIREMENT
SYSTEM, Appellee.

No. S–14178.

Supreme Court of Alaska.

Sept. 14, 2012.

Allison Mendel and Laurence Blakely, Mendel & Associates, Anchorage, for Appellant.

Seth M. Beausang, Assistant Attorney General, Anchorage, and John Burns, Attorney General, Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

A man filed an application for both occupational and nonoccupational disability benefits from the Public Employees Retirement System, claiming disability from both physical and mental conditions. An administrative law judge (ALJ) denied the man's claim, finding that he failed to establish by a preponderance of the evidence that he had a physical or mental disability that presumably permanently prevented him from satisfactorily performing his job. The man appealed and the superior court affirmed the ALJ's determination. On appeal to this court, the man challenges the ALJ's determination regarding his mental condition. Because the ALJ's written findings were sufficiently detailed to support the ALJ's conclusions, and because substantial evidence supported the ALJ's conclusion that the man's mental condition did not amount to an occupational or nonoccupational disability, we affirm the superior court's decision to uphold the ALJ's order.

## II. FACTS AND PROCEEDINGS

### A. Facts

Mark McKitrick was employed by the Municipality of Anchorage (Municipality) as a bus driver from 1995 to 2006. During his tenure with the Municipality, McKitrick filed nine reports of workplace injury or illness, some of which resulted in the filing of workers' compensation claims. McKitrick's nine reports of injury or illness occurred between October 1996 and April 2006 and included reported injuries to his neck, back, arms, face, leg, hands, wrist, ear, and shoulder. The majority of these reported injuries occurred from motor vehicle accidents, although in 2002 a reported injury occurred after a passenger spat on McKitrick and in April 2006 another occurred after a passenger assaulted McKitrick with a cane.

McKitrick did not return to work after the April 2006 assault. On June 28, 2006, the Municipality controverted McKitrick's workers' compensation claims associated with his final two reports of injury. On September 20, 2006, after McKitrick's physicians would not release him to return to work, the Municipality terminated McKitrick.

### B. Proceedings

On November 22, 2006, McKitrick filed a timely application for disability benefits from the Public Employees Retirement System (PERS). McKitrick claimed disability from " 'neck, back, shoulders, headaches, PTSD, chronic pain, chronic depression, [and] anxiety' as a result of 'multiple traumas.' " McKitrick indicated his disability was due to a work-related injury. A PERS administrator denied McKitrick's claim, finding that McKitrick had not proven that he was, at the time of separation from employment, presumably permanently disabled as defined by PERS.

McKitrick appealed the administrative decision. ALJ Rebecca L. Pauli held a four-day hearing in September 2008, during which McKitrick was assisted by a non-attorney, Barbara Williams. During the hearing the ALJ heard testimony from three of McKi-

trick's treating healthcare providers, as well as expert medical testimony from an orthopedic surgeon who had reviewed McKitrick's extensive medical records and physically examined McKitrick. McKitrick also testified. The evidentiary record additionally contained deposition testimony of three physicians and McKitrick; over 4,700 pages of medical, employment, and other records, including one accident reconstruction report; 14 physical evaluations and consultations authored by medical, osteopathic, and chiropractic professionals; 11 psychological evaluations and consultations authored by psychiatrists and psychologists; and one functional capacity assessment.

On May 26, 2009, the ALJ affirmed the PERS administrator's denial of McKitrick's application for disability benefits. In her decision, the ALJ analyzed McKitrick's physical and mental disabilities, assessed McKitrick's credibility in dealing with his health care providers, and concluded that McKitrick had failed to establish by a preponderance of the evidence that he had a physical or mental disability that presumably permanently prevented him from working as a bus driver or in a comparable position for the Municipality.

### 1. Evidence of McKitrick's mental condition[1]

In her decision, the ALJ considered the following evaluations by nine physicians regarding McKitrick's mental condition:

#### Roy D. Clark, Jr., M.D., Psychiatrist[2]

Dr. Clark examined McKitrick in September 2003, following a May 2003 motor vehicle accident. Dr. Clark based his opinion on a review of medical records, an observation of Dr. Green's physical evaluation, an administration of standard psychiatric tests, and an interview with McKitrick.

Dr. Clark noted that McKitrick "presents with a history of several job-related injuries, as well as evidence of some coping skills that would predispose him to reporting a greater degree of discomfort and disability than might be expected on the basis of the objective findings present." Dr. Clark further noted that McKitrick "presents with evidence of a mood disorder" causally related to a 1996 injury and aggravated by subsequent injury, for which treatment had been beneficial.

Regarding McKitrick's ability to work, Dr. Clark stated that "[t]he objective mental status findings do .not identify any objective barriers to Mr. McKitrick's continued full-time employment at any job for which he is otherwise qualified and would choose to pursue."

#### Ronald W. Ohlson, Ph.D., Psychologist

Dr. Ohlson interviewed McKitrick at the request of McKitrick's attorney. Dr. Ohlson based his opinion on an interview with McKitrick and a review of three psychological tests. Dr. Ohlson formally diagnosed only dysthymia,[3] although he noted McKitrick had symptoms of PTSD and chronic pain. Dr. Ohlson opined that McKitrick "is still able to work and drive his bus, although he is more easily startled and cautious about people in his environment. The fact that he is continuing to work and wants to work is a positive aspect of his recovery."

#### Ronald G. Early, Ph.D., M.D., Psychiatrist and Neurologist

Dr. Early evaluated McKitrick in January 2005 for a board-ordered second medical evaluation. He based his opinion on a review of McKitrick's medical records, an interview with McKitrick, and a review of psychological tests. Dr. Early's opinion was that "McKitrick should continue to drive a bus or have some other kind of suitable employment depending on the recommendations of his treat-

---

1. Although the ALJ considered McKitrick's physical and mental conditions, on appeal McKitrick challenges only the ALJ's conclusion regarding his mental condition.

2. Dr. Clark performed his psychiatric evaluation in conjunction with a physical evaluation conducted by Dr. James Green.

3. "Dysthymia is a mild, but chronic, form of depression." Dysthymia, MAYO CLINIC, http://www.mayoclinic.com/health/dysthymia/DS01111 (last visited Aug. 20, 2012).

ing mental health professional. Failure to continue employment will result in worsening of his condition." Dr. Early also noted that at the time of evaluation McKitrick was driving a rural route, which allowed him to avoid volatile passengers who might increase his anxiety. Dr. Early concluded that McKitrick "would be able to safely drive a bus in the [current] circumstances" and recommended that continued special consideration be given to McKitrick.

### Dr. Ramzi Nassar, M.D.

Dr. Nassar evaluated McKitrick in September 2006. He based his opinion on a review of primarily orthopedic medical records and an interview with McKitrick. He diagnosed McKitrick with PTSD, but noted that the diagnosis "was only based on the patient's [subjective] report" and that he had "no way of corroborating this information, nor [did he] feel it [was his] role to corroborate information." Dr. Nassar refused to fill out a disability form for McKitrick, as was his usual practice. Regarding McKitrick's ability to work, Dr. Nassar stated: "I feel at this time [McKitrick] is incapable of working secondary to his psychiatric symptoms, but my goal is to get him to a point of being either occupationally and vocationally trainable or be able to return to his regular duties if he is physically capable of doing so." [4]

### Eric Goranson, M.D., Psychiatrist

Dr. Goranson attempted to evaluate McKitrick in December 2006. About three-quarters of the way through the psychiatric evaluation, McKitrick became agitated and walked out. Because he was unable to complete the evaluation, Dr. Goranson was ethically prohibited from providing a firm diagnosis. Nonetheless, Dr. Goranson strongly suspected the appropriate diagnosis to be malingering. Dr. Goranson did not believe McKitrick had dysthymia, any depressive disorders, or somatoform disorder,[5] and stated that McKitrick "certainly does not have post traumatic stress disorder." Dr. Goranson also was concerned about the medical care McKitrick was receiving, noting it was "at best fragmented, poorly documented and influenced adversely by his bullying and manipulativeness towards healthcare professionals. [McKitrick] is receiving entirely too many medications." Dr. Goranson further opined that McKitrick was "primarily interested in entitlement certification" and was "milking" workers' compensation claims "to obtain financial compensation, multiple excuses from adult responsibilities, lots of unnecessary testing, visits to specialists, etc."

### Wandal W. Winn, M.D., Psychiatrist

Dr. Winn performed an evaluation of McKitrick in December 2007. He based his opinion on psychological testing and an interview with McKitrick. Dr. Winn diagnosed PTSD and major depressive disorder and recommended psychotherapeutic services, antidepressant therapy, and a potential future referral to vocational rehabilitation, noting that "a return to work is likely to reduce [McKitrick's] stressors and his depression through re-establishing his identity as a healthy, productive male."

### Richard D. Fuller, Ph.D., Clinical Neuropsychologist

Dr. Fuller performed an evaluation of McKitrick in June 2008. He based his opinion on an interview with McKitrick and the results of a personality inventory. Dr. Fuller diagnosed McKitrick with: chronic pain

---

4. Dr. Nassar was deposed on May 30, 2007. At his deposition, Dr. Nassar was informed of McKitrick's prior history and a letter McKitrick had written to the Municipality, which stated that Dr. Nassar would be supporting his psychological claim of disability. Dr. Nassar began to wonder whether McKitrick's "statements in the beginning were actually pretty accurate." Regardless, Dr. Nassar testified that, had the information presented to him at the deposition been available at the time of his initial evaluation of McKitrick, it would not have altered his treatment. Dr. Nassar still thought McKitrick incap-

able of returning to work, but he refrained from rendering an opinion on McKitrick's future ability to work.

5. "The somatoform disorders are a group of psychiatric disorders that cause unexplained physical symptoms." Oliver Oyama, Catherine Paltoo, & Julian Greengold, *Somatoform Disorders*, 76 Am Family Physician 1333, 1333 (2007), *available at* http://www.aafp.org/afp/2007/1101/p1333.html.

associated with medical and psychological factors; major depression; PTSD; and panic disorder with agoraphobia.[6] Dr. Fuller added: "Pessimism and anger govern both [McKitrick's] perceptions and behavior reducing the ability to identify solutions to his situation, resulting in ongoing resentment and disability." He expressed no opinion regarding McKitrick's ability to return to work.

### William G. Campbell, M.D., Psychiatrist

Dr. Campbell interviewed McKitrick in August 2008 as part of a psychiatric disability evaluation. He based his opinion on an interview with McKitrick, McKitrick's medical records, a report of MMPI testing completed by Dr. Fuller, and psychiatric evaluations by Drs. Goranson and Nassar.

Dr. Campbell diagnosed McKitrick with pain disorder associated with psychological factors, depressive disorder, and opiate-induced mood disorder. He agreed with Dr. Goranson that McKitrick did not have PTSD. He characterized McKitrick as a "professional patient," noting McKitrick's life "is currently centered on taking medications and interacting with doctors and representatives of insurance companies." Further, Dr. Campbell held the opinion that McKitrick's "use of opiates [contributes] to symptoms of depression, anxiety, irritability, social withdrawal, fatigue, nightmares and insomnia on a pharmacologic basis." Regarding McKitrick's ability to work, Dr. Campbell stated that if McKitrick "were not taking opiates, he would be able to resume driving a bus."

### Thomas A. Rodgers, M.D., Psychiatrist

Dr. Rodgers conducted a record review of McKitrick's mental condition at the request of the State Division of Retirement and Benefits, which administers PERS. He submitted his report in September 2008.

Dr. Rodgers stated:

There is no question that Mr. McKitrick has been a very difficult man to evaluate and treat successfully. He has filed numerous injury claims, for years has been on very high doses of opiate narcotics, most likely does not totally tell the truth, sees himself as a victim, and bounces from doctor to doctor. It is apparent that he had been treated for depression for many years prior to the purported work related injuries in 2006. What I am impressed with is that his overall psychiatric clinical condition following the 2006 incidents does not appear to be any worse than prior to that date. There is a remarkable consistency in the psychiatric-psychological data prior to the incidents, immediately following the incidents, and now in the 2008 reports.

... I am not certain that Mr. McKitrick is totally malingering but his underlying personality, bullying and manipulative behavior, and viewing himself as a perpetual victim has significantly colored any ability to document a genuine disorder. No doubt he is frustrated, in pain, and depressed but he was so prior to the 2006 incidents. I do not find compelling evidence that his overall condition changed much following the 2006 incidents even though, in my opinion, he believes it has. He was working in spite of his problems and, in agreeing with Dr. Campbell, he likely could do so again if he could discontinue the opiate pain medications.

Dr. Rodgers concluded that McKitrick was not "totally and permanently occupationally disabled at the time he separated from employment on September 2006, due to a mental condition ... that presumably prevented him from satisfactorily performing his usual duties as a bus driver or those of another comparable position[.]"

### 2. The ALJ's evaluation of McKitrick's credibility

Due to the subjective nature of McKitrick's self-reported pain complaints, the ALJ found it important to assess McKitrick's credibility when dealing with his health care providers. The ALJ discounted McKitrick's credibility for four reasons. First, the ALJ noted that

---

**6.** "Agoraphobia" is an anxiety disorder characterized by avoidance of anxiety related to open spaces or any place outside of one's home or a safe zone. *Agoraphobia*, BEHAVE NET, behavenet.com/agoraphobia (last visited Aug. 20, 2012).

"[m]any providers found Mr. McKitrick to be combative and unwilling to listen to their diagnoses if they were not what [McKitrick] wanted to hear. If a provider was unwilling to agree with [him] regarding his course of treatment or ability to return to work, Mr. McKitrick would switch providers." Second, the ALJ found that "McKitrick was not forthcoming and failed to provide several providers with a full picture of his medical history." Third, the ALJ noted that McKitrick "was observed, throughout the prehearing and hearing in this matter, to be 'conveniently confused' when something was not going his way, and then clear and precise when it was not adverse to his outcome." Finally, the ALJ found "McKitrick provided testimony that was not corroborated by the extensive medical record." For example, the ALJ noted McKitrick testified "he was able to travel to Minneapolis only after receiving injections and other treatment specifically to ready him for traveling, yet the medical records do not corroborate his testimony." Based on the above, the ALJ concluded that "McKitrick [was] not a credible witness and the reliability of his subjective complaints [was] called into question."

### 3. The ALJ's analysis of McKitrick's mental disability

In affirming the PERS administrator's denial of McKitrick's application for disability benefits, the ALJ acknowledged that "[t]he record and objective testing does establish that it is more likely than not that Mr. McKitrick suffers from some form of a mental condition." But the ALJ noted that "[s]imply having one or a combination of these conditions does [not] prevent Mr. McKitrick from driving a bus." The ALJ then considered whether McKitrick proved by a preponderance of the evidence that his mental condition presumably permanently prevented him from satisfactorily performing his job as a bus driver. The ALJ considered McKitrick's subjective complaints that purportedly rendered him unable to drive a bus. But she discounted McKitrick's complaints based on her finding that McKitrick lacked credibility. The ALJ concluded McKitrick's assertions, without further corroboration, were "insufficient to meet his burden of proof."

The ALJ then considered the conclusions of several physicians who opined McKitrick could return to work, some of whom concluded that a return to work would be beneficial for McKitrick's mental health. The ALJ found these physicians to have had a more complete profile of McKitrick than the sole physician who concluded McKitrick could not work, and the ALJ thus concluded their opinions were entitled to greater weight. The ALJ concluded that, "[w]hile the record is voluminous, it does not support a finding that it is more probable than not that Mr. McKitrick's mental condition(s) presumably permanently precluded him from performing the duties of his job."

McKitrick appealed to the superior court, which affirmed the decision of the ALJ. McKitrick now appeals from the superior court's decision.

## III. STANDARD OF REVIEW

 "When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review the merits of the board's decision."[7]

 "Factual findings made by the board are reviewed under the 'substantial evidence' standard."[8] Under the substantial evidence standard, "[f]actual findings will be upheld so long as there is enough relevant evidence to allow a reasonable mind to adequately support such a conclusion."[9] "[W]e will not reweigh conflicting evidence, determine witness credibility, or evaluate competing inferences from testimony," as these functions are reserved to the agency.[10]

**7.** *Rhines v. State,* 30 P.3d 621, 624 (Alaska 2001) (citing *DeYonge v. NANA/Marriott,* 1 P.3d 90, 94 (Alaska 2000)).

**8.** *Id.*

**9.** *Id.*

**10.** *Lindhag v. State, Dep't of Natural Res.,* 123 P.3d 948, 952 (Alaska 2005) (quoting *Robinson v. Municipality of Anchorage,* 69 P.3d 489, 493 (Alaska 2003)) (internal quotation marks omitted); *see also Rhines,* 30 P.3d at 629 (This court will not reweigh the evidence under the substantial evidence standard; it will "only determine if

"[E]ven where there is conflicting evidence, [we] will uphold the ... decision if it is supported by substantial evidence."[11]

■ To the extent the ALJ's decision is based on statutory interpretation, "such decisions involve questions of law to which we apply our independent judgment. We will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[12]

## IV. DISCUSSION

### Substantial Evidence Supported The ALJ's Conclusion That McKitrick's Mental Condition Did Not Amount To An Occupational Or Nonoccupational Disability.

McKitrick advances two primary arguments on appeal: (1) the ALJ's written findings were insufficiently detailed to support her conclusions; and (2) the opinions of physicians who believed McKitrick able to return to work do not constitute substantial evidence of McKitrick's ability to satisfactorily perform his job as a bus driver.

■ PERS provides members with two types of disability benefits: (1) occupational[13] and (2) nonoccupational.[14] Eligibility for both occupational and nonoccupational disability benefits requires an employee to prove by a preponderance of the evidence that the employee has a "mental condition that ... presumably permanently prevents [the] employee from satisfactorily performing the employee's usual duties ... or the duties of another comparable position or job that an employer makes available and for which the employee is qualified by training or education."[15] "The employee has the burden of proving that the requirements of the statute [are] met."[16]

### 1. The ALJ's written findings were sufficiently detailed to support her conclusions.

■ McKitrick argues that the ALJ's written findings are insufficiently detailed to support her conclusions. In particular, McKitrick contends that the ALJ "simply concluded that McKitrick is able to work without making sufficiently specific findings on the numerous diagnoses of mental conditions," particularly somatoform disorder, chronic pain syndrome, and PTSD. Without

---

11. *DeYonge*, 1 P.3d at 94 (citing *Williams v. State, Dep't of Revenue*, 938 P.2d 1065, 1069 (Alaska 1997)).

12. *Rhines*, 30 P.3d at 624 (quoting *Berger v. Wien Air Alaska*, 995 P.2d 240, 242 (Alaska 2000)) (internal quotation marks omitted).

13. AS 39.35.410(a) provides that "[a]n employee is eligible for an occupational disability benefit if employment is terminated because of a total and apparently permanent occupational disability, as defined in AS 39.35.680, before the employee's normal retirement date." AS 39.35.680(27) defines "occupational disability" as follows:

> a physical or mental condition that, in the judgment of the administrator, presumably permanently prevents an employee from satisfactorily performing the employee's usual duties for an employer or the duties of another comparable position or job that an employer makes available and for which the employee is qualified by training or education; however, the proximate cause of the condition must be a bodily injury sustained, or a hazard undergone, while in the performance and within the scope of the employee's duties and not the

proximate result of the wilful negligence of the employee.

14. AS 39.35.400(a) provides that "[a]n employee is eligible for a nonoccupational disability benefit if the employee's employment is terminated because of a total and apparently permanent nonoccupational disability, as defined in AS 39.35.680." AS 39.35.680(24) defines "nonoccupational disability" as follows:

> a physical or mental condition that, in the judgment of the administrator, presumably permanently prevents an employee from satisfactorily performing the employee's usual duties for an employer or the duties of another position or job that an employer makes available and for which the employee is qualified by training or education, not including a condition resulting from a cause that the board, in its regulations[,] has excluded.

15. AS 39.35.680(24), (26). The ALJ did not reach the issue of whether McKitrick's mental condition was proximately caused by his employment because she determined McKitrick did not sustain his burden of proving he had a mental condition that presumably permanently prevented him from satisfactorily performing his job.

16. *Rhines*, 30 P.3d at 628; *see also Stalnaker v. Williams*, 960 P.2d 590, 594 (Alaska 1998); *State v. Cacioppo*, 813 P.2d 679, 682–83 (Alaska 1991).

such findings, McKitrick argues, meaningful appellate review is unavailable. McKitrick contends that a "meaningful reading of the statutory definition of 'occupational disability' [or nonoccupational disability]" requires the ALJ to determine both the nature and severity of McKitrick's alleged mental condition before determining whether that condition "presumably permanently" prevents him from satisfactorily completing his work as a bus driver. In support of his argument, McKitrick relies on *Stephens v. ITT/Felec Services*[17] for the proposition that an ALJ must make "sufficiently specific findings."[18]

 "An administrative agency must make findings of fact and conclusions of law regarding all issues that are both 'material' and 'contested.'"[19] We will remand the case if an agency's findings or conclusions are "insufficient to permit intelligent appellate review."[20] "Findings are adequate to permit appellate review when at a minimum, they show that the [agency] considered each issue of significance, demonstrate the basis for the [agency's] decision, and are sufficiently detailed."[21]

McKitrick's argument is unavailing. Pursuant to AS 39.35.680(24) and AS 39.35.680(27), an employee must prove each of three distinct elements by a preponderance of the evidence as part of an application for occupational or nonoccupational disability benefits: (1) There must be "a physical or mental condition"; (2) the condition must "prevent[ ] an employee from satisfactorily performing the employee's usual duties for an employer or the duties of another position or job that an employer makes available and for which the employee is qualified by training or education"; and (3) the condition must be "presumably permanent[ ]." The statutory test is conjunctive—an absence of any element is fatal to an employee's application for disability benefits.

The ALJ specifically found that McKitrick had satisfied his burden of proving by a preponderance of the evidence that he suffers from a mental condition. Outside of whether that mental condition presumably permanently prevents him from satisfactorily performing his job as a bus driver, the plain language of AS 39.35.680(24) and AS 39.35.680(27) requires no additional findings regarding the nature and severity of McKitrick's mental condition. The ALJ also specifically determined that McKitrick was not presumably permanently prevented from satisfactorily completing his job as a bus driver. Pursuant to the plain language of AS 39.35.680(24) and AS 39.35.680(27), each element is dispositive—so long as McKitrick was not prevented from satisfactorily performing his job as a bus driver, McKitrick would be unable to meet his burden, regardless of the nature and severity of his mental condition.

McKitrick makes a related argument that the ALJ's written findings fail to adequately explain her conclusions regarding McKitrick's alleged disability, including: a failure "to recognize or analyze the fact that the precise evidence [the ALJ] found to support denial of benefits, *i.e.*, that [McKitrick's] pain cannot be explained solely on the basis of physical causes, is in fact consistent with the mental health diagnoses"; and a failure "to perform any analysis of whether [McKitrick's] mental health symptoms impeded his ability to drive a bus." McKitrick contends such failure to explain requires a remand.

In her order, the ALJ recited the factual history of the case and then analyzed every physical and mental health evaluation submitted into the record, including the mental health evaluations of nine physicians and psychologists. The ALJ assessed each physician's or psychologist's mental health diagnoses, identifying relevant observations and opinions of each, including, where offered,

**17.** 915 P.2d 620 (Alaska 1996).

**18.** *Id.* at 627.

**19.** *Lindhag v. State, Dep't of Natural Res.*, 123 P.3d 948, 953 (Alaska 2005) (citing *Bolieu v. Our Lady of Compassion Care Ctr.*, 983 P.2d 1270, 1275 (Alaska 1999)).

**20.** *Id.* (citing *Stephens*, 915 P.2d at 627).

**21.** *Id.* (citing *Stephens*, 915 P.2d at 629 (Matthews, J., dissenting in part) (internal quotation marks omitted)).

any opinion regarding McKitrick's ability to work. The ALJ explained why she discounted McKitrick's subjective complaints and why she found McKitrick lacked credibility in dealing with his health care providers. The ALJ then applied the correct statutory tests regarding occupational and nonoccupational disabilities and concluded McKitrick failed to prove that his mental condition presumably permanently prevented him from satisfactorily performing his work by a preponderance of the evidence.

Contrary to McKitrick's assertions, the ALJ specifically identified her reasons for discounting diagnoses based on McKitrick's subjective complaints and for not further analyzing his alleged mental health symptoms—she found that McKitrick lacked credibility. The ALJ then concluded that McKitrick's subjective statements alone, on account of his lack of credibility, were insufficient to prove he was prevented from performing his job. Rather than defer to McKitrick's subjective statements, the ALJ specifically referenced several physicians' and psychologists' conclusions that McKitrick could work. The ALJ noted that she found these physicians and psychologists to have "had a more complete profile of Mr. McKitrick than did Dr. Nassar," the sole physician who opined that McKitrick could not return to work. "Therefore," the ALJ concluded, "their opinion[s] regarding Mr. McKitrick's ability to work [are] more persuasive than Dr. Nassar's." The ALJ's explanation adequately shows that she considered each issue of significance, demonstrated the basis for her decision, and was sufficiently detailed to support her conclusions.

### 2. Substantial evidence supported the ALJ's conclusion.

McKitrick next contends that the ALJ lacked substantial evidence to support her conclusion that McKitrick did not suffer from an occupational or nonoccupational disability. In particular, he argues that the opinions of physicians who believed McKitrick able to return to work do not constitute substantial evidence of McKitrick's ability to satisfactorily perform his job. McKitrick contends that these doctors "did not conclude

that McKitrick was 'not mentally disabled'" and "provided no opinion on whether McKitrick was able to 'satisfactorily perform[ ] [his] usual duties.'" McKitrick also contends that "[a] finding that McKitrick was disabled by his prescribed use of opiates supports a finding of mental disability as a result of his diagnosed impairments."

Because the ALJ determined that McKitrick's subjective complaints of pain were not credible, the ALJ primarily relied on the opinions of nine physicians and psychologists who concluded that McKitrick could return to work. Of the nine who evaluated McKitrick's mental health, five concluded McKitrick could return to work. Of these five, two concluded a return to work would have a positive impact on McKitrick's recovery. The ALJ found the opinions of these five more persuasive than the others, and accordingly gave greater weight to their conclusions.

Of the nine physicians and psychologists, only one, Dr. Nassar, concluded that McKitrick could not work. But the ALJ discounted Dr. Nassar's evaluation, noting that Dr. Nassar did not perform any testing on McKitrick and that his diagnosis of PTSD was based solely on McKitrick's subjective self-reporting, which the ALJ did not find credible. Dr. Nassar's opinion also was based on incomplete information received from McKitrick.

It is true, as McKitrick contends, that of the five physicians who thought McKitrick could return to work, only one, Dr. Rodgers, unequivocally recited the statutory language and concluded that McKitrick was not "presumably [permanently] prevented ... from satisfactorily performing his usual duties as a bus driver or those of another comparable position[.]" And it is true that, of those same five physicians, only Dr. Rodgers unequivocally stated that McKitrick would be able to "satisfactorily" perform his job as a bus driver, were he to return to work. But a reasonable mind could accept that the opinions of five physicians who thought McKitrick could return to work were adequate to support the ALJ's conclusion that McKitrick was not presumably permanently prevented from satisfactorily performing his job as a bus driver.

Moreover, Dr. Rodgers's opinion alone could constitute substantial evidence in support of the ALJ's decision.[22]

Additionally, the fact that several physicians concluded that McKitrick should not return to work until he discontinued use of opiate pain medications does not necessitate the conclusion that McKitrick suffered from an underlying mental condition that presumably permanently prevented him from performing his job. Notably, Dr. Rodgers, who opined that McKitrick could return to work if he could discontinue use of opiate pain medications, nonetheless concluded that McKitrick did not suffer from a mental condition that rendered him presumably permanently disabled.

Finally, even had McKitrick successfully met his burden of demonstrating that his mental condition was sufficiently disabling, the ALJ also determined that McKitrick had not met his burden of demonstrating that his mental condition was presumably permanent. The record contains little evidence regarding the presumed permanency of McKitrick's mental condition, and McKitrick does not directly address this finding on appeal. Even Dr. Nassar, the sole physician who believed McKitrick's mental condition prevented him from returning to work, declined to state if McKitrick's mental condition was presumably permanent.

Because McKitrick bore the burden of proving that his mental condition was sufficiently disabling and because the ALJ's conclusion need only be supported by "substantial evidence," the ALJ's decision is subject to a very minimal standard of review.[23] There need only be substantial evidence to allow a reasonable mind to conclude McKitrick did not meet his burden.[24] Given that the ALJ determined McKitrick lacked credibility when dealing with his health care providers, and therefore his subjective complaints of pain were not credible, and that five physicians thought McKitrick could return to work, we conclude that substantial evidence supported the ALJ's conclusion that McKitrick did not meet his required burden of proving a mental disability.

## V. CONCLUSION

Because the ALJ's written findings were sufficiently detailed to support her conclusions, and because substantial evidence supported the ALJ's conclusion that McKitrick's mental condition did not amount to an occupational or nonoccupational disability, we AFFIRM the superior court's decision to uphold the ALJ's order.

**22.** *See, e.g., Lindhag v. State, Dep't of Natural Res.,* 123 P.3d 948, 953–54 (Alaska 2005) (board may appropriately rely on one medical expert over others where decision to do so is accompanied by sufficient explanation and medical expert's opinion constitutes substantial evidence).

**23.** *See Rhines v. State,* 30 P.3d 621, 629 (Alaska 2001).

